903 A.2d 636 (2006)
Jeffrey S. BROADBELT, Appellant
v.
COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, Bureau of Driver Licensing.
Commonwealth Court of Pennsylvania.
Submitted on Briefs June 23, 2006.
Decided July 27, 2006.
*637 Robert J. Donatoni, West Chester, for appellant.
Timothy P. Wile, Asst. Counsel In-Charge and Harold H. Cramer, Asst. Chief Counsel, Harrisburg, for appellee.
BEFORE: McGINLEY, Judge, FRIEDMAN, Judge, and LEADBETTER, Judge.
*638 OPINION BY Judge FRIEDMAN.
Jeffrey S. Broadbelt (Licensee) appeals from the January 26, 2006, order of the Court of Common Pleas of Chester County (trial court), which denied his appeal from the suspension of his driving privileges imposed by the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Licensing (DOT) pursuant to section 1547 of the Vehicle Code (Code).[1] We affirm.
On May 30, 2005, DOT notified Licensee that as a result of his refusal to submit to chemical testing on May 14, 2005, his driver's license was suspended for one year pursuant to section 1547 of the Code. (R.R. at 9a-11a.) Subsequently, Licensee filed a timely appeal from this suspension with the trial court, which held a de novo hearing on September 8, 2005.
At the hearing, the parties stipulated to the following facts. On May 14, 2005, Pennsylvania State Trooper Felix Costa (Trooper Costa) found Licensee's car parked on the side of the road with Licensee asleep behind the wheel. Trooper Costa contacted the local police department, East Whiteland Township Police Department, which sent Officer Brian Sweisfurth (Officer Sweisfurth) to the scene. Licensee woke up with a start and indicated that he had been driving, but that he had pulled over because he had had too much to drink that night and had wanted to sleep it off. While exiting his car, Licensee almost fell over. Officer Sweisfurth administered three field sobriety tests, which Licensee failed, and requested Licensee to take a portable breath test, which Licensee refused to take. At that time, Officer Sweisfurth placed Licensee under arrest for driving under the influence (DUI) and transported Licensee to a local hospital to have blood drawn. (R.R. at 14a-16a.)
Testifying on behalf of DOT, Officer Sweisfurth stated that he arrived at the hospital with Licensee at around 1:26 a.m., he read the Pennsylvania Implied Consent DL-26 Form (DL-26 Form) to Licensee two times, and, when requested, he gave Licensee the DL-26 Form to read on his own for a third time. According to Officer Sweisfurth, he asked Licensee three times to submit to a chemical test, but each time Licensee neither answered nor indicated that he did not understand the DL-26 Form. At 1:40 a.m., Officer Sweisfurth decided that Licensee's silence amounted to a refusal to submit to a chemical test, and he transported Licensee from the hospital to the police station to be processed. (R.R. at 19a-22a, 34a, 43a.)
On cross-examination, Officer Sweisfurth acknowledged that he read paragraphs three and four of the DL-26 Form[2] to Licensee but did not separately *639 inform Licensee that the result of a refusal could enhance his license suspension penalty. Officer Sweisfurth confirmed that there was another individual in the room at the time and that this other individual did attempt to speak with Licensee; however, Officer Sweisfurth stated that he did not have enough interaction with the other person to determine whether the person was simply speaking a lot. (R.R. 33a-34a, 36a.)
Officer Anthony Falgiatore (Officer Falgiatore) of the East Whiteland Township Police Department also testified on behalf of DOT, stating that when he arrived at the hospital, Officer Sweisfurth was with Licensee in the holding room. Officer Falgiatore observed Officer Sweisfurth reading the DL-26 Form to Licensee twice, and he also saw Licensee reading the DL-26 Form for a third time himself without ever indicating that he had any questions about the Form. Officer Falgiatore testified that, thereafter, he asked Licensee to submit to a blood test and that Licensee did not respond. According to Officer Falgiatore, the other person in the room made a single statement to Licensee, but Officer Falgiatore did not recall exactly what was said. (R.R. at 51a-54a, 58a.)
Licensee also testified at the hearing, describing his version of the events. Licensee stated that he drank approximately five scotches that evening and that he should not have been driving. Licensee admitted that he understood that the officers were taking him to the hospital for a blood test; however, Licensee asserted that he never refused to submit to the blood test. According to Licensee, after Officer Sweisfurth read him the DL-26 Form twice, he asked Officer Sweisfurth some questions about the possibility of a one year suspension of his driver's license and that, upon his request, Officer Sweisfurth gave him the DL-26 Form to read for himself. Licensee testified further that, while he was still reading the DL-26 Form, Officer Falgiatore declared that Licensee had refused to submit to the blood test and that he was removing Licensee from the hospital. Licensee could not recall whether the officers ever asked him if he was willing to submit to the blood test; he denied "not responding" to any of the officers' questions; but he stated that if, in fact, he did not respond, he did not intend that as a refusal to submit to a blood test. (R.R. at 66a-74a.) Licensee testified that while Officer Sweisfurth read him the DL-26 Form, another occupant in the room was "just gibber jabbering to a certain degree, talking to me as if this was a social event." (R.R. at 73a.) On cross-examination, Licensee admitted that he "was not affirmative" and that he did not "volunteer that information" when the officers requested that he assent to a blood test. (R.R. at 76a.)
After considering the evidence presented, the trial court rejected Licensee's testimony as not credible and accepted the testimony of both Officer Sweisfurth and Officer Falgiatore.[3] The trial court found that Licensee received a meaningful opportunity to comply with the statute because, over a span of twelve minutes, Officer Sweisfurth administered the DL-26 Form warnings twice, Licensee read the warnings once for himself and *640 Licensee did not ask any questions or otherwise indicate that he did not understand the warnings. The trial court then concluded that Licensee did not unequivocally assent to the blood test, denied Licensee's appeal and reinstated the license suspension. (R.R. at 88a-90a.) Licensee now appeals to this court.[4]
In order to sustain a suspension of operating privileges under section 1547 of the Code, DOT must establish that: (1) the licensee was arrested for drunken driving by a police officer who had reasonable grounds to believe that the motorist was operating a motor vehicle while under the influence of alcohol; (2) the licensee was requested to submit to a chemical test; (3) the licensee refused to submit; and (4) the licensee was warned that refusal would result in a license suspension. Berman v. Department of Transportation, Bureau of Driver Licensing, 842 A.2d 1025 (Pa. Cmwlth.2004). In proving whether a licensee refused to submit to chemical testing, DOT has the burden of showing that the licensee was offered a meaningful opportunity to comply with section 1547 of the Code. Petrocsko v. Department of Transportation, Bureau of Driver Licensing, 745 A.2d 714 (Pa.Cmwlth.2000). Once DOT satisfies its burden, the licensee must establish that the refusal was not knowing or conscious or that the licensee physically was unable to take the test. Berman.
On appeal, Licensee alleges that he did not have a meaningful opportunity to comply with section 1547 of the Code due to the short amount of time he was given to consider the DL-26 Form warnings and the distraction from the other person in the room. Consequently, Licensee argues that the trial court erred in holding that DOT had satisfied its burden of proving that Licensee refused to submit to the chemical test and that Licensee had failed to establish that his refusal was not knowing or conscious.[5] We disagree.
To support his argument that these circumstances denied him a meaningful opportunity to comply with the statute, Licensee relies on McCamey v. Commonwealth, 144 Pa.Cmwlth. 292, 601 A.2d 471 (1991), appeal denied, 532 Pa. 647, 614 A.2d 1144 (1992), for the proposition that the Commonwealth has a duty to ensure that the implied consent warnings are administered in such a manner that they are readily understood by the licensee. *641 Licensee maintains that, because Officers Sweisfurth and Falgiatore failed to ensure that he understood the DL-26 Form warnings, they did not satisfy this duty. However, in making this argument, Licensee misconstrues our holding in McCamey.
In McCamey, the licensee fled the scene of his arrest before the officer could read him the DL-26 Form warnings; based on the licensee's fleeing the scene, the officer registered a refusal to submit to a chemical test, and DOT suspended the licensee's driving privileges for one year. Id. This court reversed the suspension reasoning that, because the licensee fled the scene before the officer could read the DL-26 warnings to the licensee, the officer failed to perform his affirmative duty of conveying the certainty of suspension.[6]
Contrary to Licensee's assertions, McCamey says nothing about the Commonwealth's duty to ensure that a licensee understands the warnings; rather, McCamey requires only that before a refusal may be recorded, the Commonwealth fulfill its affirmative duty to convey to a licensee the certainty of suspension upon refusal to submit to a chemical test. See also Martinovic v. Department of Transportation, Bureau of Driver Licensing, 881 A.2d 30 (Pa.Cmwlth.2005) (holding that an officer's sole duty is to inform a licensee of the consequences of refusing to submit to a chemical test, that this duty is satisfied once the officer reads the DL-26 Form warnings and that officers have no duty to make sure that a licensee understands the consequences of refusing a chemical test).
Here, there is no doubt that Licensee received the DL-26 Form warnings; Officer Sweisfurth read the form to Licensee twice and Licensee read it once on his own. Further, based on the accepted testimony, the trial court found that: (1) Licensee had approximately twelve minutes to consider the warnings; (2) Licensee never indicated that he did not understand the warnings, that he needed more time to review the warnings or that the other person distracted him; and (3) the other person in the room, in fact, did not distract Licensee. Accordingly, like the trial court, we conclude that Licensee had a meaningful opportunity to comply with section 1547 of the Code and agree to submit to the blood test and that his silence constituted a refusal in violation of section 1547 of the Code.[7]Department of Transportation v. Renwick, 543 Pa. 122, 131, 669 A.2d 934, 939 (1996) (quoting Department of Transportation, Bureau of Traffic Safety v. Mumma, 79 Pa.Cmwlth. 108, 468 A.2d 891, 892 (1983)) (holding that "anything less than an unqualified, unequivocal assent [to chemical testing following an arrest for DUI] constitutes a refusal [to submit to testing] under section 1547 [of the Code]").
Accordingly, we affirm.

ORDER
AND NOW, this 27th day of July, 2006, the order of the Court of Common Pleas of *642 Chester County, dated January 26, 2006, is hereby affirmed.
NOTES
[1] 75 Pa.C.S. § 1547. Section 1547(b)(1)(i) of the Code authorizes DOT to suspend the driving privileges of a licensee for one year where the licensee is placed under arrest for driving under the influence of alcohol, and the licensee refuses a police officer's request to submit to chemical testing.
[2] Paragraphs three and four of the DL-26 Form, in relevant part, provide:

3. [I]f you refuse to submit to the chemical test, your operating privilege will be suspended for at least one year. In addition, if you refuse to submit to the chemical test, and you are convicted of, plead to, or adjudicated delinquent with respect to violating Section 3802(a) [driving under the influence] of the [Code], because of your refusal, you will be subject to the more severe penalties set forth in Section 3804(c) of the [Code], which include a minimum of seventy-two hours in jail and a minimum fine of $1,000.00.
4. [A]ny request to speak with an attorney or anyone else ... after being provided these warnings or remaining silent when asked to submit to chemical testing will constitute a refusal, resulting in the suspension of your operating privilege and other enhanced criminal sanctions if you are convicted of violating Section 3802(a) of the [Code].
(R.R. at 85a) (emphasis added).
[3] The trial court is the finder of fact, and questions of credibility and conflicts in the evidence are for the trial court to resolve. Schlata v. Department of Transportation, Bureau of Driver Licensing, 744 A.2d 814 (Pa. Cmwlth.2000).
[4] Our scope of review in a license suspension case is to determine whether the trial court's findings are supported by competent evidence, whether errors of law have been committed or whether the trial court's determinations demonstrate an abuse of discretion. Department of Transportation v. Renwick, 543 Pa. 122, 669 A.2d 934 (1996). Whether a licensee's conduct constitutes a refusal in violation of section 1547 of the Code is a question of law. Id.
[5] According to Licensee, there is no discrepancy in the testimony regarding the distraction caused to Licensee by the other person in the room while Officer Sweisfurth was relaying the DL-26 Form warnings. Thus, Licensee asserts that he is not challenging the trial court's credibility determinations but, rather, is contending that the warnings were inadequate as a matter of law. (Licensee's brief at 13.) However, Licensee's attempt to relabel his argument must fail. In this regard, we note that neither Officer Sweisfurth nor Officer Falgiatore testified that the other person in the room distracted Licensee; in fact, they testified that Licensee asked no questions to indicate that: (1) he did not understand the warnings; (2) he was distracted by the other person; or (3) he needed more time to review the warnings. In contrast, Licensee testified that the other person distracted him, that he asked questions about the warnings and that he was still reading the DL-26 Form when the refusal was declared. Clearly, there was conflicting testimony, which the trial court resolved by crediting the officers' testimony, and we cannot review the trial court's credibility determinations on appeal. Schlata.
[6] An affirmative duty requires strict compliance. McCamey.
[7] Both Officer Sweisfurth and Officer Falgiatore credibly testified that Licensee failed to respond when asked to submit to a blood test, and Licensee acknowledged that he did not "answer affirmatively" when the officers requested that he submit to the blood test. We note that this court has long held that "`police officers are not required to spend effort either cajoling the [licensee] or spend time waiting to see if the [licensee] will ultimately change his mind.'" King v. Department of Transportation, Bureau of Driver Licensing, 828 A.2d 1, 5 n. 8 (Pa.Cmwlth.2002) (quoting Appeal of Miller, 79 Pa.Cmwlth. 648, 470 A.2d 213, 214 (1984)), appeal denied, 577 Pa. 738, 848 A.2d 931 (2002).