# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jack Keener,                          :
                    Appellant        :
                              :
                              :     No. 1003 C.D. 2016
            v.              :            1004 C.D. 2016
                              :     Submitted: December 23, 2016
                              :
Commonwealth of Pennsylvania,         :
Department of Transportation, Bureau  :
of Driver Licensing                   :

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
               HONORABLE JULIA K. HEARTHWAY, Judge
               HONORABLE JOSEPH M. COSGROVE, Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**              **FILED: May 25, 2017**

Jack Keener (Licensee) appeals from orders of the Court of Common Pleas of Lebanon County (trial court)[1] that denied his statutory appeals from a one-year suspension of his operating privilege pursuant to Section 1547(b)(1) of the Vehicle Code, commonly known as the Implied Consent Law,[2] and a lifetime disqualification of his privilege to drive a commercial motor vehicle, imposed in accordance with the requirements of 75 Pa. C.S. §1611(c) (relating to *two separate and distinct incidents* involving certain offenses and *refusals*).  These civil penalties were imposed as a consequence of Licensee's refusal to submit to chemical testing in connection with his arrest for violating 75 Pa. C.S. §3802

---

[1] The Honorable Samuel A. Kline, presiding.

[2] Section 1547(b)(1) requires any person placed under arrest for driving under the influence (DUI) "to submit to chemical testing … [and if that person] refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person … for a period of 12 months."  75 Pa. C.S. §1547(b)(1).

(relating to driving under the influence of alcohol or controlled substance (DUI)). The Department of Transportation, Bureau of Driver Licensing (PennDOT) suspended his operating privileges for refusing a blood test.

Factually, Licensee contends the trial court erred when it held Licensee refused chemical testing of his blood because he never informed the officer that he would not take the test and the officer did not wait a reasonable amount of time to determine Licensee's actions amounted to a refusal to submit to the requested blood test. Legally, Licensee also asserts suspension of his operating privileges for refusing to submit to chemical testing violates his Fourth Amendment right against warrantless blood tests incident to arrest and is therefore unconstitutional in light of the U.S. Supreme Court decision in Birchfield v. North Dakota, ___ U.S. ___, 136 S. Ct. 2160 (2016). Discerning no error below, we affirm.

## I. Background

PennDOT notified Licensee of the one-year suspension of his operating privilege, and a lifetime disqualification of his privilege to drive a commercial motor vehicle, as a consequence of his refusal to submit to chemical testing after his arrest for DUI. Licensee timely appealed to the trial court.

The trial court held a *de novo* hearing at which three witnesses testified on behalf of PennDOT as follows. Police officer Andrew Harner (Officer Harner) received a call for an incident on Lehman Street in Lebanon, Pennsylvania. Certified Record (C.R.), Item No. 11, Tr. Ct. Hr'g, Notes of Testimony (N.T.), at 5-6. Dispatch notified Officer Harner of the registration of a

2

truck that fled from the scene of the incident.  Id. at 6.  Dispatch also advised Officer Harner that the truck was registered at an address located in the 400 block of North Second Avenue in Lebanon.  Id.  Upon arrival at the North Second Avenue address, Officer Harner observed a truck matching the description and registration Dispatch provided to him.  Id. at 7.

Officer Harner approached the running vehicle and spoke with the driver, Licensee.  Id. at 7-8.  Licensee informed Officer Harner he consumed a little bit of alcohol on the day in question.  Id. at 8.  Officer Harner stated he knew Licensee prior to this incident, and based on those previous interactions, Officer Harner noticed Licensee's speech and actions were lethargic.  Id. at 8, 12-13.

Police officer Chad Bowman (Officer Bowman) also testified on behalf of PennDOT as follows.  Officer Bowman received the same dispatch as Officer Harner.  Upon arrival at the address provided, Officer Bowman questioned Licensee regarding his alcohol consumption.  Id. at 15-16.  In response, Licensee only nodded up and down.  Id. at 16.  Officer Bowman asked if Licensee remembered hitting a car on Lehman Street.  Licensee answered that he did not recall hitting a car.  Id. at 17.  Throughout his interactions with Licensee, Officer Bowman detected a moderate odor of alcohol, slowed speech, slow movement and bloodshot eyes.  Officer Bowman "noticed damage on the passenger side of the truck consistent with fresh damage of a vehicle accident of minor impact."  Id.

Several times Officer Bowman requested that Licensee exit his vehicle, but Licensee did not comply.  Id. at 17.  Thereafter, Officer Bowman

3

opened the door and took the keys out of the ignition. Id. at 17-18. Officer Bowman assisted Licensee out of the truck, "because, again, he wouldn't perform simple tasks." Id. Officer Bowman placed him under arrest for suspicion of DUI and took him to the hospital to perform tests. Id.

At the hospital, Licensee declined to perform a Walk and Turn field sobriety test because of his back. Id. at 19. Officer Bowman conducted another test, which showed signs of impairment. Id. After the test, Officer Bowman helped Licensee walk without staggering to another room to perform a blood draw. Id. at 20. Officer Bowman read the chemical test warnings on PennDOT Form DL-26[3] (Warning) to Licensee approximately two or three times because Licensee stated he did not understand the Warning. Id. at 22.

After the Warning was read to him, Licensee asked Officer Bowman what he should do. Licensee also repeatedly requested to speak to his friend, "George," who Officer Bowman later discovered was an attorney. Id. at 22-23. Officer Bowman spent approximately 10 or 12 minutes going over the Warning. Id. Officer Bowman testified Licensee never verbally consented to the blood draw, but never told Officer Bowman he refused the blood draw. Id. at 23, 25, 31.

---

[3] Form DL-26 "inform[s] a motorist that [he:] is under arrest; ... is being requested to submit to a chemical test; ... will lose [his] operating privileges and potentially face stricter criminal penalties if the request is refused; and[,] there is no right to remain silent or speak to an attorney." Grogg v. Dep't of Transp., Bureau of Driver Licensing, 79 A.3d 715, 717 (Pa. Cmwlth. 2013).

4

Ashley Wynne, a phlebotomist at the hospital (Phlebotomist) testified on behalf of PennDOT. Phlebotomist testified she worked the day Officer Bowman brought Licensee into the hospital. Phlebotomist testified she received a page to draw blood, but was instructed to wait outside the room where Officer Bowman and Licensee were located. Id. at 33-35. A few minutes later, Officer Bowman informed Phlebotomist that she was no longer needed to perform the blood draw. Id. at 35.

At the hearing, PennDOT also submitted the Warning, and other certified documents related to the case. These items were admitted into evidence without objection. Id. at 21-22.

One witness and Licensee testified on behalf of Licensee. Licensee testified he went to the home of Richard Winters (Winters) to pick up snow shoes for his snow plow and had a beer with him. Id. at 43. Licensee testified he pushed in his passenger side mirror on his truck upon leaving Winters' house because the streets in Lebanon are narrow. Id. Licensee testified that shortly after he arrived at his business in the 400 block of North Second Avenue, police pulled in behind him and began to question him about an accident that occurred on Lehman Street. Id. at 44. Licensee testified that he and Officer Bowman talked for a short period and the conversation "didn't go over very well." Id. Licensee testified he was placed in handcuffs and taken to the hospital. Upon arrival at the hospital, the handcuffs were removed from Licensee and he sat on a chair. Licensee testified that Officer Bowman asked him to consent to a blood draw. Id. at 45. Licensee testified he never informed Officer Bowman he would not consent to the blood draw.

5

However, Licensee also stated he never informed Officer Bowman he would consent to the blood draw. Id. at 45, 47.

Licensee also presented the testimony of Winters. Winters testified Licensee picked up snow shoes at his home and each of them drank one 12-ounce beer the afternoon of the incident. Id. at 39-40. Winters also testified he did not believe Licensee was impaired and did not have any difficulty communicating with Licensee before leaving. Id. at 40.

Ultimately, the trial court denied Licensee's appeal. Licensee appealed to this Court.

In response to Licensee's concise statement of errors complained of on appeal, the trial court issued an opinion pursuant to Pa. R.A.P. 1925(a). The trial court credited Officer Bowman's testimony regarding his explanation of the Warning. Specifically, the trial court explained:

> [A]fter reading the [Warning] for the first time to [Licensee], [Licensee] informed Officer Bowman that he did not understand the [Warning]. Officer Bowman testified that he slowly read the [Warning] again to [Licensee] and [Licensee] asked Officer Bowman what he should do. Officer Bowman informed [Licensee] that he could not give [Licensee] advice nor tell [him] what he should do. Thereafter, [Licensee] requested to speak to his friend George, which Officer Bowman advised [Licensee] he could not do. Officer Bowman stated that he read the [Warning] at least two to three times to [Licensee] and [Licensee] never verbally consented to the chemical blood test.

C.R., Item No. 15 at 8.

6

The trial court also read the Warning at the hearing and specifically quoted the Warning in relevant part in its opinion:

> You have no right to speak with an attorney or anyone else before deciding whether to submit [to] testing. If you request to speak with an attorney or anyone else after being [advised] of these Warnings, you have remained silent when asked to submit to the chemical test. You have refused the test. (Emphasis added.)

Id. (citation omitted); see also C.R., Item No. 11 at 55.

At the hearing, the trial court concluded, "[h]ow many more times does Officer Bowman have to read this [Warning] before it's a refusal?" Id. at 56. In its opinion, the trial court explained that the Warning "[c]learly … advised [Licensee] that anything less than clear consent to the chemical testing would be considered a refusal and subject to consequences." C.R., Item No. 15 at 9. Thus, the trial court found no merit in Licensee's argument that a reasonable amount of time was not afforded to him, as the record clearly indicated Officer Bowman read the Warning to Licensee "multiple times." Id.

The trial court also addressed Licensee's reliance on Birchfield. The trial court held that these civil penalties involved in these appeals are not impacted as a result of Birchfield. Consequently, the trial court found Licensee's assignments of error lacked merit. Licensee appeals.[4]

---

[4] Our review is limited to determining whether the trial court's necessary findings of fact were supported by substantial evidence or whether the court committed an error of law or otherwise abused its discretion. Reinhart v. Dep't of Transp., Bureau of Driver Licensing, 954

**(Footnote continued on next page…)**

## II. Issues

Licensee contends the trial court erred in denying his appeal from a suspension under the Implied Consent Law because PennDOT failed to establish Licensee refused to submit to chemical testing of his blood. Licensee also argues suspension of his operating privileges for refusing to submit to chemical testing of his blood is unconstitutional in light of the U.S. Supreme Court decision in <u>Birchfield</u>.

## III. Discussion

To sustain a license suspension under the Implied Consent Law, PennDOT must establish a licensee: (1) was arrested for DUI by a police officer with reasonable grounds to believe the licensee operated the vehicle while under the influence; (2) was asked to submit to a chemical test; (3) refused to do so; and, (4) was specifically warned a refusal would result in suspension of his driver's license. <u>See</u> <u>Quigley v. Dep't of Transp., Bureau of Driver Licensing</u>, 965 A.2d 349 (Pa. Cmwlth. 2009); <u>Broadbelt v. Dep't of Transp., Bureau of Driver Licensing</u>, 903 A.2d 636 (Pa. Cmwlth. 2006).

In demonstrating whether a licensee refused chemical testing, PennDOT must prove the police officer offered the licensee a meaningful opportunity to comply with the Implied Consent Law. <u>Broadbelt</u>. If PennDOT

---

**(continued…)**

A.2d 761 (Pa. Cmwlth. 2008). In reviewing a license suspension appeal, we may not make new or different findings of fact. <u>Id.</u> Rather, we will only review the trial court's findings to determine if they are supported by the record. <u>Id.</u> In doing so, we review the evidence in the light most favorable to the prevailing party. <u>Id.</u>

satisfies this burden, the burden shifts to the licensee to prove his refusal was not knowing or conscious, or that he was physically incapable of submitting to the test. Dep't of Transp., Bureau of Driver Licensing v. Ingram, 648 A.2d 285 (Pa. 1994); Broadbelt.

The issue of whether a licensee refused chemical testing is one of law, based on the facts as found by the trial court. Nardone v. Dep't of Transp., Bureau of Driver Licensing, 130 A.3d 738 (Pa. 2015); Tullo v. Dep't of Transp., Bureau of Driver Licensing, 837 A.2d 605 (Pa. Cmwlth. 2003). Whether there was a refusal of chemical testing "turn[s] on a consideration of whether the motorist's overall conduct demonstrates an unwillingness to assent to an officer's request for chemical testing." Nardone, 130 A.3d at 749.

In addressing this issue, our courts consistently hold that anything less than an unqualified, unequivocal assent to submit to testing constitutes a refusal. Dep't of Transp., Bureau of Driver Licensing v. Renwick, 669 A.2d 934 (Pa. 1996). Further, "[a] licensee need not explicitly refuse to submit to testing but may demonstrate through his overall conduct a general unwillingness to submit to testing. Officers are not required to 'spend effort either cajoling the licensee or spend time waiting to see if the licensee will ultimately change his mind.'" Walkden v. Dep't of Transp., Bureau of Driver Licensing, 103 A.3d 432, 440 (Pa. Cmwlth 2014).

Determinations as to the credibility of witnesses and the weight assigned to their testimony are solely within the province of the fact-finder. Millili

v. Dep't of Transp., Bureau of Driver Licensing, 745 A.2d 111 (Pa. Cmwlth. 2000). "As fact-finder, the trial court may accept or reject the testimony of any witness in whole or in part." Reinhart v. Dep't of Transp., Bureau of Driver Licensing, 954 A.2d 761, 765 (Pa. Cmwlth. 2008) (citation omitted).

Here, Licensee contends the trial court erred when it determined he refused to submit to chemical testing of his blood because he never informed Officer Bowman he would not take the test. Licensee further asserts Officer Bowman did not wait a reasonable amount of time to determine Licensee's actions were a refusal. "The inherent concerns [Licensee] has is the lack of patience on Officer Bowman's part for a decision to be made during a criminal investigation." Pet'r's Br. at 10. Licensee asserts simply asking a police officer one or two questions does not imply to a reasonable person that the person is unwilling to make a decision. Rather, Licensee asks that we construe this conduct as a "typical response" during an otherwise stressful encounter.

Contrary to Licensee's assertions, Officer Bowman's testimony at the hearing demonstrates that once Licensee was transported to the hospital for testing, he read the Warning for the first time to Licensee.[5] Officer Bowman testified Licensee did not understand the Warning. Officer Bowman testified he slowly read the Warning again to Licensee, after which Licensee asked Officer Bowman what he should do. Officer Bowman testified that at this point, Licensee requested

---

[5] The warnings on the DL-26 Implied Consent Warning Form are sufficient as a matter of law to advise a licensee of his rights under the Implied Consent Law. McKenna v. Dep't of Transp., Bureau of Driver Licensing, 72 A.3d 294 (Pa. Cmwlth. 2013).

10

to speak to his friend George. Officer Bowman informed Licensee he could not speak with George at this time. Officer Bowman further testified he read the Warning to Licensee <u>at least two to three times</u>, and Licensee never verbally consented to the chemical blood test. N.T. at 22-23.

Licensee contends that Officer Bowman did not allow him the opportunity to sign the Warning, "to demonstrate [Licensee's] unequivocal refusal to submit to the test." Pet'r's Br. at 11. This is a misstatement of the standard: PennDOT does not need to prove a licensee's unequivocal refusal. To the contrary, anything less than an unqualified, unequivocal assent is deemed a refusal. Licensee's conduct here clearly falls short of the "unqualified, unequivocal assent" necessary for submission to chemical testing. See <u>Winebarger v. Dep't of Transp., Bureau of Driver Licensing</u>, 655 A.2d 1093, 1095-96 (Pa. Cmwlth. 1995) (licensee's statement that only two attempts be made to draw blood and limiting the second attempt to a specific arm placed "impediments and preconditions" that were in effect a refusal to submit to testing).

There is no merit in Licensee's argument that he was not afforded a reasonable amount of time to consent to testing. In addition to the time Officer Bowman spent with Licensee before his arrest at the truck, after arrest on the way to the hospital, and performing field sobriety testing at the hospital, Officer Bowman read the Warning to Licensee multiple times, over a period of 10 to 12 minutes. Licensee clearly demonstrated his unwillingness to assent to Officer Bowman's request for blood testing by asking for George and asking Officer Bowman what he should do. Licensee's overall conduct constituted a refusal.

11

<u>Renwick</u>. The trial court correctly held Licensee refused chemical testing because he never submitted to the blood test requested by Officer Bowman. <u>Nardone</u>; <u>Renwick</u>; <u>Walkden</u>.

Licensee next asserts his operating privilege suspension and commercial driving privilege disqualification are unlawful in light of <u>Birchfield</u>.

We recently addressed and rejected the same argument in a reported opinion in <u>Boseman v. Department of Transportation, Bureau of Driver Licensing</u>, ___ A.3d ___ (Pa. Cmwlth., No. 746 C.D. 2016, filed March 17, 2017). We noted that <u>Birchfield</u> addressed the constitutionality of a state statute that made it a *crime* to refuse a warrantless blood test after being arrested for DUI. We concluded that although <u>Birchfield</u> may have some impact in criminal DUI proceedings in Pennsylvania where enhanced penalties based on refusal of a blood test are imposed, such is not the case in a civil license suspension appeal under the Implied Consent Law. Consequently, we determined that the licensee's Fourth Amendment challenge to the Implied Consent Law failed. We reach the same conclusions here.

For all the above reasons, we affirm.

_____
ROBERT SIMPSON, Judge

12

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jack Keener,                             :
              Appellant        :
                         :    No. 1003 C.D. 2016
      v.                             :        1004 C.D. 2016
                         :
Commonwealth of Pennsylvania,            :
Department of Transportation, Bureau     :
of Driver Licensing                      :

## O R D E R

**AND NOW**, this 25th day of May, 2017, the orders of the Court of Common Pleas of Lebanon County are **AFFIRMED**.

 

                                  _____

                                  ROBERT SIMPSON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jack Keener,                                   :
                    Appellant                  :
                                               :
          v.                                   :
                                               :
Commonwealth of Pennsylvania,                  :     No. 1003 C. D. 2016
Department of Transportation,                  :     No. 1004 C. D. 2016
Bureau of Driver Licensing                     :     Submitted: December 23, 2016

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
          HONORABLE JULIA K. HEARTHWAY, Judge
          HONORABLE JOSEPH M. COSGROVE, Judge

OPINION NOT REPORTED

DISSENTING OPINION
BY JUDGE COSGROVE                              FILED: May 25, 2017

        This decision expands the definition of "refusal" far beyond that
which *Nardone v. Department of Transportation, Bureau of Driver Licensing,* 130
A.3d 738 (Pa. 2015) and *Department of Transportation, Bureau of Driver
Licensing v. Renwick*, 669 A.2d 934 (Pa. 1996) allow. While a finding of refusal
may be based on overall conduct, there was no such "conduct" in this case -- Mr.
Keener did nothing and said nothing. If an effort to perform the blood test were
undertaken and he then attempted to thwart the effort, that would be different.
That is not the case here, however. As a matter of law, we cannot assign a finding
of "refusal" under these circumstances.   I therefore dissent.

                                        _____
                                        JOSEPH M. COSGROVE, Judge