# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Amischa Moody, : 
               Appellant : 

                : 

            v. :    No. 864 C.D. 2021

                :    Submitted: March 3, 2023

Commonwealth of Pennsylvania, : 

Department of Transportation, : 

Bureau of Driver Licensing : 

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE MARY HANNAH LEAVITT, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT               FILED: May 9, 2023

         Amischa Moody (Licensee) appeals an order of the Court of Common Pleas of York County (trial court) upholding the suspension of her operating privilege by the Pennsylvania Department of Transportation, Bureau of Driver Licensing (PennDOT), for refusing to submit to chemical testing after her arrest for driving under the influence. Licensee argues that PennDOT did not meet its burden of proving that she refused to submit to chemical testing as set forth in Section 1547(b)(1) of the Vehicle Code, known as the Implied Consent Law.[1] For the reasons that follow, we affirm the trial court.

---

[1] 75 Pa. C.S. §1547(b)(1). It states, in pertinent part, as follows:

    (1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:

        (i) Except as set forth in subparagraph (ii), for a period of 12 months.

        (ii) For a period of 18 months if any of the following apply:

The underlying facts are not in dispute. On January 23, 2021, while on duty, Pennsylvania State Trooper David Owens encountered a vehicle parked on the side of the road and found Licensee asleep in the driver's seat. After waking Licensee, Trooper Owens instructed her to put the car in park and step outside. The odor of burnt marijuana and alcohol emanated from the car, and Trooper Owens then detected the smell of alcohol on Licensee once she was outside the vehicle. Notes of Testimony, 6/30/2021, at 21 (N.T. __); Reproduced Record at 30a (R.R. __).

Putting Licensee through various field sobriety tests, Trooper Owens found multiple signs of impairment. Additionally, a preliminary breath test showed a blood alcohol level of 0.203. Trooper Owens arrested Licensee for driving under the influence and placed her in the back of the police vehicle. Trooper Owens read the warnings on PennDOT's DL-26B Form[2] and requested Licensee to submit to a

---

(A) The person's operating privileges have previously been suspended under this subsection.

(B) The person has, prior to the refusal under this paragraph, been sentenced for:

(I) an offense under section 3802;

(II) an offense under former section 3731;

(III) an offense equivalent to an offense under subclause (I) or (II);

(IV) a combination of the offenses set forth in this clause.

75 Pa. C.S. §1547(b)(1).

[2] The form states, in relevant part, as follows:

It is my duty as a police officer to inform you of the following:

1. You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.

2. I am requesting that you submit to a chemical test of blood.

3. If you refuse to submit to the blood test, your operating privileges will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, your operating privilege will be suspended for up to 18 months[.]

2

chemical blood test. Trooper Owens asked Licensee if she understood everything, to which she replied that she did not. He then asked Licensee what part of the warnings she did not understand, but she remained silent. He read the warnings again and asked Licensee if she would submit to a blood test. Licensee did not respond, which Trooper Owens construed as a refusal. From the first reading of the warnings to Licensee, to her silence after the second reading, approximately five or six minutes elapsed. Trooper Owens wrote "refused" on Licensee's signature line on the DL-26B Form from which he had read the warnings. N.T. 34-35; R.R. 43a-44a. *See also* Supplemental Reproduced Record at 5b (S.R.R. __).

By notice of February 23, 2021, PennDOT informed Licensee that her operating privilege was suspended for 18 months for "chemical test refusal."[3] R.R. 4a. Licensee appealed the suspension, and the trial court held a hearing on June 30, 2021.

Trooper Owens testified to the above-recited facts. Licensee testified that she "was going to ask questions [but Trooper Owens] didn't give [her] time to [do so]." N.T. 40; R.R. 49a. She further testified that while Trooper Owens was reading the Implied Consent warnings, "there were tractor trailers driving back and forth[.]" N.T. 41; R.R. 51a. In addition, she testified that she has "trouble hearing,"

---

4. You have no right to speak to an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings *or you remain silent when asked to submit to a blood test, you will have refused the test.*

Supplemental Reproduced Record at 5b (S.R.R. __) (emphasis added).

[3] As noted by PennDOT, Licensee's driving record showed that she had committed a prior violation on November 17, 2019. As a result, PennDOT imposed an 18-month suspension pursuant to 75 Pa. C.S. §1547(b)(1)(ii)(A), which provides that a subsequent offense will result in an 18-month suspension. However, Licensee successfully appealed her prior suspension. Thus, if this Court affirms the trial court, PennDOT will impose a 12-month suspension in accordance with 75 Pa. C.S. §1547(b)(1)(i). PennDOT Brief at 11 n.4.

and she believed there was a "Plexiglass" divider in the vehicle. N.T. 42-43; R.R. 52a-53a. Licensee added that she is "scared of the police." N.T. 42; R.R. 52a.

At the conclusion of the hearing, the trial court issued a decision from the bench dismissing Licensee's appeal. The trial court found that Trooper Owens requested Licensee to submit to a chemical test of her blood, but she refused in spite of being warned that a refusal would result in a suspension of her operating privilege. The trial court upheld PennDOT's suspension of her operating privilege. Licensee appealed to this Court.[4]

On appeal, Licensee raises one issue. She contends that PennDOT did not meet its burden of proving that she knowingly and consciously refused to submit to a chemical blood test. PennDOT rejoins that the record is clear that Licensee did not agree to submit to a blood test.

We begin with a review of the relevant law. To sustain a suspension of a licensee's operating privilege under the Implied Consent Law, PennDOT must establish that the licensee was arrested for driving under the influence by a police officer; was asked to submit to a chemical test; refused to do so; and was warned that refusal might result in a license suspension. *Banner v. Department of Transportation, Bureau of Driver Licensing*, 737 A.2d 1203, 1206 (Pa. 1999). Whether a licensee has refused a request for chemical testing is a question of law based upon the facts as found by the trial court. *Nardone v. Department of Transportation, Bureau of Driver Licensing*, 130 A.3d 738, 748 (Pa. 2015). Courts must look to the overall conduct of the licensee to determine if her conduct

---

[4] In reviewing an operating privilege suspension matter, this Court determines whether the trial court's findings are supported by substantial evidence, whether errors of law have been committed, or whether the trial court committed a manifest abuse of its discretion. *Tirado v. Department of Transportation, Bureau of Driver Licensing*, 876 A.2d 1082, 1085 n.6 (Pa. Cmwlth. 2005).

constituted a refusal of a chemical test. *Department of Transportation v. Renwick*, 669 A.2d 934, 939 (Pa. 1996). PennDOT has the burden of showing that the licensee was offered a meaningful opportunity to comply with Section 1547 of the Vehicle Code, 75 Pa. C.S. §1547. *Petrocsko v. Department of Transportation, Bureau of Driver Licensing*, 745 A.2d 714, 716 (Pa. Cmwlth. 2000). Questions of evidentiary weight and witness credibility fall to the trial court to resolve. *Hasson v. Department of Transportation, Bureau of Driver Licensing*, 866 A.2d 1181, 1186 (Pa. Cmwlth. 2005). In *Mooney v. Department of Transportation, Bureau of Driver Licensing*, 654 A.2d 47 (Pa. Cmwlth. 1994), this Court explained as follows:

> As long as sufficient evidence exists in the record which is adequate to support the finding found by the trial court, as factfinder, [an appellate court is] precluded from overturning that finding and must affirm, *thereby paying the proper deference due to the factfinder who heard the witnesses testify and was in the sole position to observe the demeanor of the witnesses and assess their credibility.*

*Id.* at 50 (quoting *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873, 875 (Pa. 1989)) (emphasis added).

Licensee argues that PennDOT was required to demonstrate that it provided her a meaningful, reasonable, and sufficient opportunity to make a knowing and conscious choice about whether to submit to blood testing or to accept the consequences for not agreeing to the test. Licensee contends that her overall conduct "did not demonstrate a general unwillingness to take the test;" rather, she was "cooperative and cordial" during her entire interaction with Trooper Owens. Licensee Brief at 8. Trooper Owens acknowledged that Licensee did not understand what he read to her. Licensee maintains that she was "briefly contemplating her decision before [Trooper Owens] understood her silence to be a refusal." *Id.* at 9.

5

Further, Licensee was not provided a copy of the DL-26B Form to read and "no further discussion regarding the testing occurred." *Id*.

Licensee asserts that PennDOT did not establish whether she refused the test or merely refused to sign the DL-26B Form. She contends "[t]here is nothing in the record indicating an independent basis for the refusal as Trooper Owens did not ask [her] if she would undergo the testing without signing the Form[.]" Licensee Brief at 10. Consequently, PennDOT did not establish "an independent basis" for her refusal "apart from [Licensee] exercising [her] [] right not to sign a superfluous form." *Id*. at 9-10.

In her argument, Licensee relies on this Court's decision in *Petrocsko* for the proposition that PennDOT "should only prevail in such cases if it can demonstrate a basis for the refusal other than the [licensee's] insistence on not signing the waiver." Licensee Brief at 8 (quoting *Petrocsko*, 745 A.2d at 718). There is a difference between a refusal to sign the DL-26B Form and a refusal to undergo testing.

In addition, Licensee cites *Broadbelt v. Department of Transportation, Bureau of Driver Licensing*, 903 A.2d 636 (Pa. Cmwlth. 2006), to illustrate a situation where a licensee was given a meaningful opportunity to consider the Implied Consent warnings. In that case, the licensee's silence constituted a refusal of blood testing where, over a 12-minute period, he was read the Informed Consent Form twice; read the Form himself; and did not state that he did not understand the warnings. Licensee argues that, by contrast, her silence was brief and followed a statement that she did not understand the warnings. Thus, she was not provided a meaningful opportunity to consider the warnings.

6

Licensee explains that she was not given time to have her questions answered. She testified to having difficulty hearing the warnings because of traffic noise and the plexiglass divider in the police vehicle. Licensee Brief at 4. Further, Licensee's "fear of the police [] may have caused her to pause or hesitate without ever refusing to provide a chemical sample." *Id.*

PennDOT counters that any response from a licensee other than an unqualified, unequivocal assent to submit to testing constitutes a refusal. PennDOT Brief at 13 (citing *Department of Transportation, Bureau of Traffic Safety v. Cannon*, 286 A.2d 24, 26 (Pa. Cmwlth. 1972)). PennDOT explains that the "occasion is not one for debate, maneuver or negotiation, but rather a simple 'yes' or 'no' to the officer's request." PennDOT Brief at 13 (quoting *Commonwealth v. Morris*, 280 A.2d 658, 660 (Pa. Super. 1971)). PennDOT argues that *Petrocsko* is inapposite because, in that case, the licensee agreed to submit to a blood test while sitting in a police officer's vehicle. Here, Licensee refused Trooper Owens' request for a blood test by her conduct, *i.e.*, silence, while she was sitting in the back of Trooper Owens' police vehicle. Licensee's subsequent refusal to sign the DL-26B Form occurred later, at the State Police barracks, and had nothing to do with her earlier refusal of the blood test in Trooper Owens' police vehicle.

It is not disputed that over a five- to six-minute period, Trooper Owens twice read the DL-26B Form to Licensee and asked her what parts of the warnings she did not understand. Licensee remained silent. Although she asserts that she was thinking over her questions, Licensee did not testify that she intended to comply with a request for a chemical test. Nor did she request time to think. The trial court noted "[t]he only thing we have is [Licensee's] subjective intent to have asked some questions that weren't [] actually vocalized." N.T. 55; R.R. 65a. The trial court

7

found "no credible testimony that [Licensee] in fact claimed to not hear what [Trooper Owens] said." N.T. 54-55; R.R. 64a-65a.

In *Petrocsko*, the licensee agreed to the chemical test but refused to execute a form to waive the hospital's liability. This Court held that this "form is unnecessary because the Vehicle Code [] grants civil immunity to hospitals and medical personnel regarding the withdrawal of blood under such circumstances." *Petrocsko*, 745 A.2d at 716 (quoting Order of the Court of Common Pleas of Westmoreland County, 3/2/1998, at 2-4)). Further, the licensee's refusal to waive the hospital's liability did not revoke his earlier consent to chemical testing of his blood. *Petrocsko* is distinguishable.

Here, Licensee did not consent to blood testing *at any point* in the process. The warnings specifically provide that if an individual remains "silent when asked to submit to a blood test, [she] will have refused the test." DL-26B Form; S.R.R. 5b. The lack of Licensee's signature on the DL-26B Form may, or may not, provide an independent basis for her refusal but, in itself, has little or no relevance. *Cf. Renwick*, 669 A.2d at 939 (refusal to sign consent form does not constitute refusal to take a chemical blood test).

The trial court found that Trooper Owens read the Implied Consent warnings to Licensee two times; Licensee asked no questions; and Licensee remained silent when asked if she would take the test. This scenario occurred over the course of five to six minutes. We discern no error in the trial court's conclusion that, by her silence, Licensee communicated a refusal to submit to blood testing.

8

For these reasons, we affirm the order of the trial court denying Licensee's appeal of the suspension of her operating privilege.

_____

MARY HANNAH LEAVITT, President Judge Emerita

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Amischa Moody,                              :
                    Appellant              :
                                           :
          v.                               :        No. 864 C.D. 2021
                                           :
Commonwealth of Pennsylvania,              :
Department of Transportation,              :
Bureau of Driver Licensing                 :

## **O R D E R**

AND NOW, this 9th day of  May, 2023, the June 30, 2021, order of the Court of Common Pleas of York County, in the above-captioned matter, is AFFIRMED.


_____
MARY HANNAH LEAVITT, President Judge Emerita