IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Matthew Jay Miller,                       :
                                          :
                    Appellant             :
                                          :
            v.                            : No.  519 C.D. 2023
                                          : Submitted:  June 4, 2024
Commonwealth of Pennsylvania,             :
Department of Transportation,             :
Bureau of Driver Licensing                :


BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge (P.)
           HONORABLE ELLEN CEISLER, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                FILED:  August 5, 2024


            Matthew Jay Miller (Licensee) appeals the order of the Court of Common Pleas of the Fifty-Ninth Judicial District, Elk County Branch (trial court), dismissing his appeal from an 18-month suspension of his operating privileges, imposed by the Department of Transportation, Bureau of Driver Licensing (DOT), pursuant to Section 1547(b)(1)(ii)(B)(II) of the Vehicle Code,[1] based on his refusal

_____

[1] 75 Pa. C.S. §1547(b)(1)(ii)(B)(II).  This statute, commonly known as the Implied Consent Law, states:

> (1) If any person placed under arrest for a violation of [Section 3802
> of the Vehicle Code, 75 Pa. C.S. §3802,] is requested to submit to

**(Footnote continued on next page…)**

to submit to a blood test in connection with his arrest for violating Section 3802 of the Vehicle Code, 75 Pa. C.S. §3802 (relating to driving under the influence (DUI) of alcohol or a controlled substance). After careful review, we affirm.

On June 22, 2021, Licensee was notified by DOT that his privilege to operate a motor vehicle was suspended for a period of 18 months, pursuant to Section 1547(b)(1)(ii)(B)(II) of the Vehicle Code, because of the alleged refusal by Licensee to submit to chemical testing of his blood on May 30, 2021. Licensee timely appealed to the trial court on July 21, 2021, which conducted a *de novo* hearing on April 19, 2023.

At the hearing, DOT presented the testimony of Pennsylvania State Trooper Jeffrey Wilson (Trooper Wilson), who testified to the following. On May 30, 2021, at approximately 5:28 p.m., Trooper Wilson was dispatched to the scene of a motor vehicle accident on Halton Road in Spring Creek Township. Trial Court

---

testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, [DOT] shall suspend the operating privilege of the person as follows:

\* \* \*

(ii) For a period of 18 months if any of the following apply:

\* \* \*

(B) The person has, prior to the refusal under this paragraph, been sentenced for:

\* \* \*

(II) an offense under former [S]ection 3731[, *former* 75 Pa. C.S. §3731.]

Licensee's certified driving record shows that on October 30, 2003, he was convicted for driving under the influence (DUI) under the former Section 3731. *See* Reproduced Record (RR) at 88a.

2

Hearing, 4/19/23, Notes of Testimony (N.T.) at 3.[2] Trooper Wilson arrived at approximately 5:43 p.m., to find Licensee's car located off the roadway and "damaged beyond being driven from the scene[,]" such that it had to be towed. *Id.* at 6. Upon encountering Licensee, Trooper Wilson "noted a smell of alcohol coming from him. His eyes were bloodshot and watery," and "[h]e was more talkative than usual and slurred in his speech." *Id.* at 7. Trooper Wilson did not notice any visible sign of injuries. *Id.* at 8. Licensee admitted that he "consumed approximately four beers and one vodka drink," and that he was "driving over the speed limit" when the accident happened. *Id.* at 8, 15.

Trooper Wilson administered a Horizontal Gaze Nystagmus (HGN) field sobriety test. Trial Court Hearing, N.T. at 8. Trooper Wilson also attempted standardized field sobriety tests, but these were discontinued because of Licensee's inability to follow directions and the dangerous nature of the curved road. *Id.* At this point, Licensee suggested that he "be taken to the hospital for a legal blood draw." *Id.* Consequently, Trooper Wilson placed Licensee under arrest for DUI and transported Licensee to Penn Highlands Elk Hospital for a chemical blood test. *Id.* at 9.

While at the hospital, Trooper Wilson read the DL-26B form for a blood draw, which contains Implied Consent warnings for failure to consent to a blood test, to Licensee. Trial Court Hearing, N.T. at 10. Trooper Wilson testified: "At the time [Licensee] did not answer to us. I believe I attempted to explain to him again and that we needed a yes or no answer, and he mockingly replied as his answer is yes or no." *Id.* Similarly, Trooper Wilson stated that Licensee never consented to a blood draw after being read the DL-26B form warnings. *Id.* Trooper Wilson deemed

_____

[2] A transcript of the trial court's hearing may be found in the Reproduced Record at pages 15a-71a.

Licensee's conduct as a refusal to consent to a chemical blood test. *Id*. at 21. As such, Trooper Wilson ceased attempting to elicit assent from Licensee.

At the hearing, Licensee testified on his own behalf. Licensee stated that he was "kind of shaken up" during the field sobriety tests and had "so much adrenalin" that he asked, "can we just go to the hospital and do a test there?" Trial Court Hearing, N.T. at 30. However, while travelling to the hospital, Licensee began to express to Trooper Wilson his belief that testing was unnecessary and that he wanted to get home to watch a hockey game. *Id*. at 32. He even went so far as to describe the testing as a pointless "dog and pony show" and agreed that he believed it was a "waste of everyone's time." *Id*. at 40. Licensee further stated that Trooper Wilson never read any of the Implied Consent DL-26B form warnings to him. *Id.* at 33. Because Licensee had already admitted to having consumed alcohol, he believed the only way to prove his innocence was by submitting to testing. *Id*. at 43. However, while at the hospital, he expressed his general fear of needles and his reluctance to submit to a blood draw. *Id.* He related the following to his counsel on redirect at the trial court's hearing:

> [Licensee's Counsel]: So let me just back up because on direct exam -- one of your answers was to the effect of, I don't want to give blood, but I'm going to because I have to.
>
> [Licensee]: Yeah. It's part of the -- it's part of the process. You have to -- you have to -- to play by their rules. And that's the rule. If I could prove somehow that I don't have enough alcohol in my system at least to be legally drunk or whatever -- this is the only way to do it. . . . .
>
> I had already admitted that I had alcohol in my system. Now what I can do is prove how much alcohol in my system -- is in my system. The only way to do that is to give blood. So it has to be done. It's part of the process.

4

> It's -- do I want to? Did I want to that day? No. Would I
> want to right now? No. Would I want to at all, ever? No.
> But that particular day it was in the cards. Had to happen.

*Id.* (interruptions omitted). Licensee also asserted that while on the way to the police station he pleaded with Trooper Wilson to "just get this over with," and to "go back inside, [and] do the blood work." *Id.* at 35-36.

Based on the testimony and evidence presented, the trial court found the following relevant facts. Contrary to Licensee's testimony, the trial court found that Trooper Wilson did read the DL-26B form warnings to Licensee. Trial Court Op., 4/26/23, at 2. Likewise, "[a]t no time did [Licensee] consent to chemical testing . . .," but responded with sarcastic and mocking answers as related by Trooper Wilson and by Licensee's own admission. *Id.* The trial court also acknowledged Licensee's testimony regarding his fear of needles and his repeated statements regarding his reluctance to ever give blood. *Id.* at 3. Relying on *Jacobs v. Department of Transportation, Bureau of Driver Licensing*, 695 A.2d 956 (Pa. Cmwlth. 1997), the trial court observed that "[f]ear of needles and a general fear of contracting a disease during chemical testing does not provide valid justification for refusing to submit to chemical testing." Trial Court Op., 4/26/23, at 4. As such, the trial court concluded that Licensee

> did not provide unqualified and/or unconditional consent
> to Trooper Wilson to submit to chemical testing but rather
> [Licensee] engaged in gamesmanship and evasiveness
> immediately upon being transported by Trooper Wilson
> for chemical testing as [Licensee] expressed his intent and
> mindset at time of evidentiary hearing by testifying that
> chemical testing was a "waste of everyone's time" and a
> pointless "horse and pony show."

5

*Id.*[3] Hence, the trial court overruled and dismissed Licensee's appeal. Licensee then filed the instant appeal to this Court.

On appeal, Licensee argues that the trial court erred in ruling that he refused the blood test because his *overall conduct* manifested assent to the testing. Specifically, Licensee believes the trial court mistakenly focused its inquiry on Licensee's sarcastic responses as proof of his refusal. Licensee's Brief at 12. In Licensee's view, he manifested assent when he suggested that he be taken to the hospital for testing in the first place and, in any event, his acknowledgment that he had a fear of needles did not alter his intention to submit to chemical testing. *Id.* at 12-13.

We find this argument unavailing. Initially, it is not the province of this Court to make new or different findings of fact. *Reinhart v. Department of Transportation, Bureau of Driver Licensing*, 954 A.2d 761, 765 (Pa. Cmwlth. 2008). Whether a licensee refused to submit to a blood test is a question of law, and it is well settled that determinations as to the credibility of witnesses and the weight of their testimony is solely within the province of the trial court. *Grogg v. Department of Transportation, Bureau of Driver Licensing*, 79 A.3d 715, 718 (Pa. Cmwlth. 2013); *McGee v. Department of Transportation, Bureau of Driver Licensing*, 803 A.2d 255, 258 (Pa. Cmwlth. 2002). Additionally, the evidence must be viewed in a light most favorable to the party that prevailed before the trial court. *Reinhart*, 954 A.2d at 765.

---

[3] We note a small discrepancy in the trial court's opinion: where Licensee referred to testing as a "dog and pony show[,]" the trial court recited this sentiment by stating Licensee referred to this testing as a "horse and pony show." *See* Trial Court Hearing, N.T. at 40; Trial Court Op., 4/26/23, at 4. Although the exact phrasing is immaterial to our disposition, we will adopt Licensee's phrasing for the sake of accuracy.

To support the suspension of a licensee's operating privileges under 75 Pa. C.S. §1547(b)(1)(ii)(B)(II), DOT has the burden of proving that (1) the licensee was arrested for drunken driving by a police officer who had reasonable grounds to believe that the licensee was operating a motor vehicle while under the influence of alcohol; (2) the licensee was requested to submit to a chemical test; (3) the licensee refused to submit; and (4) the licensee was warned that refusal would result in a license suspension. *Grogg*, 79 A.3d at 718 (citing *Broadbelt v. Department of Transportation, Bureau of Driver Licensing*, 903 A.2d 636, 640 (Pa. Cmwlth. 2006)).

Whether a licensee refused to submit to chemical testing is a question of law that depends on the factual determinations of the trial court. *Hudson v. Department of Transportation, Bureau of Driver Licensing*, 830 A.2d 594, 599 (Pa. Cmwlth. 2003). To prove whether a licensee refused a chemical blood test, the Department must show that the licensee was provided a meaningful opportunity by the police officer to consent. *Petrocsko v. Department of Transportation, Bureau of Driver Licensing*, 745 A.2d 714, 716 (Pa. Cmwlth. 2000). Critically, we have held that anything less than an unqualified, unequivocal assent will be deemed a refusal. *McKenna v. Department of Transportation, Bureau of Driver Licensing*, 72 A.3d 294, 298 (Pa. Cmwlth. 2013).

In addition, police officers are not required to spend time either cajoling an arrestee or waiting for a licensee to change his mind. *Department of Transportation, Bureau of Traffic Safety v. Ferrara*, 493 A.2d 154, 156-157 (Pa. Cmwlth. 1985). Furthermore, whether a licensee was able to make a knowing and conscious refusal is based on facts determined by the trial court. *Barbour v. Department of Transportation, Bureau of Driver Licensing*, 732 A.2d 1157, 1160

7

(Pa. 1999). Such a factual finding must be affirmed so long as sufficient evidence exists to support the finding. *Id.* at 1160. If DOT satisfies its burden, the burden then shifts to the licensee to prove that his refusal was not knowing or conscious or that the licensee was physically unable to take the test. *Broadbelt*, 903 A.2d at 640.

Here, it is Licensee, rather than the trial court, that has failed to consider Licensee's overall conduct. Indeed, Licensee overlooks much of the trial court's reasoning. First and foremost, even though Licensee requested a blood draw prior to being read the DL-26B form warnings, he thereafter engaged in "gamesmanship" to prevent the testing because he viewed it as a pointless "dog and pony show" which was a "waste of everyone's time." *See* Trial Court Hearing, N.T. at 32, 40. Then, upon being read the DL-26B form warnings by Trooper Wilson, Licensee failed to respond. *Id*. at 10. Moreover, when Trooper Wilson subsequently pressed Licensee to give him a straightforward yes or no answer, Licensee sarcastically responded that his answer was "yes or no." *Id*. Finally, to the extent Licensee's statements regarding his fear of needles manifested assent at all, it was surely a qualified assent. *In toto*, Licensee's conduct regarding his consent to chemical testing fell well short of the unqualified, unequivocal assent required under the Implied Consent Law.

Because DOT demonstrated that Licensee was given a meaningful opportunity to take the test, but he refused, the burden then shifted to Licensee to show by competent medical evidence that he was physically incapable of taking the chemical test or that the refusal was not knowing or conscious. *Broadbelt*, 903 A.2d at 640. In this respect, however, Licensee has limited his argument before this Court solely to whether his overall conduct manifested assent. Thus, upon review, the trial court did not err in determining that Licensee refused to submit to chemical testing.

8

Accordingly, we affirm the trial court's order.

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Matthew Jay Miller,           :
                              :
                Appellant     :
                              :
        v.                    : No. 519 C.D. 2023
                              :
Commonwealth of Pennsylvania, :
Department of Transportation, :
Bureau of Driver Licensing    :

# **O R D E R**

AND NOW, this 5<u>th</u> day of <u>August</u>, 2024, the order of the Court of Common Pleas of the Fifty-Ninth Judicial District, Elk County Branch, filed April 26, 2023, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge