**Kimberly I. GROGG, Appellant**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 28, 2013.

Decided July 31, 2013.

Ordered Published Oct. 16, 2013.

Edward F. Spreha, Jr., Harrisburg, for appellant.

Philip M. Bricknell, Assistant Counsel, Harrisburg, for appellee.

BEFORE: LEADBETTER, Judge, McCULLOUGH, Judge, and COVEY, Judge.

OPINION BY Judge McCULLOUGH.

Kimberly I. Grogg (Licensee) appeals from the December 13, 2012 order of the Court of Common Pleas of Cumberland County (trial court) denying her statutory appeal from a one-year suspension of her driving privileges imposed by the Department of Transportation (DOT) pursuant to section 1547(b)(1) of the Vehicle Code.[1] We affirm.

On July 14, 2012, Officer Nathaniel Funk of the Hampden Township Police Department responded to a hit-and-run crash in the parking lot of a local bar while on uniformed patrol duty. (Reproduced Record (R.R.) at 16a.) Before Officer Funk reached the scene of the collision, the Cumberland County Dispatch Center advised the Officer that a witness had made contact with Licensee and that he suspected Licensee was under the influence of alcohol. (R.R. at 16a–17a.) When Officer Funk arrived at the parking lot, the witness who related the facts of the hit-and-run reiterated his suspicion that Licensee was under the influence of alcohol. (R.R. at 17a–18a.)

Officer Funk made contact with the Licensee while she was still in her vehicle and observed that she was chewing on mints, had red glassy eyes, and was unresponsive to his questions. *Id.* Officer Funk then escorted Licensee to a nearby parking lot to conduct field sobriety testing. (R.R. at 18a–19a.) Before conducting the field sobriety tests, Licensee admitted that she had consumed one drink. (R.R. at 21a.) Officer Funk conducted field sobriety testing and observed several indicators of intoxication. (R.R. 18a–23a, 55a.) After considering Licensee's performance in the field sobriety test, the circumstances of the hit-and-run, and Licensee's admission, Officer Funk concluded that Licensee was unable to operate her vehicle and placed Licensee under arrest for driving while under the influence of alcohol or a controlled substance (DUI). (R.R. at 23a, 55a.)

---

1. Section 1547(b)(1)(i) provides that if any person placed under arrest for driving while under the influence is requested to submit to a chemical test and refuses to do so, DOT shall suspend the person's operating privilege for one year. 75 Pa.C.S. § 1547(b)(1)(i).

Officer Funk transported Licensee to Cumberland County Prison and placed her in the custody of the corrections officers for processing and chemical testing. (R.R. at 24a.) Officer Funk read verbatim the chemical test warnings to Licensee from the DL–26 Form [2] and signed the affidavit on the bottom of the form indicating that he had read the warnings. (R.R. at 25a–26a, 56a.) Officer Funk also informed Licensee that if she refused to consent to chemical testing she could lose her license for twelve to eighteen months. (R.R. at 56a.) Officer Funk then offered to let Licensee read the warnings herself from the DL–26 Form, but, in reply, Licensee asked to go to the ladies' room. (R.R. at 56a.) Officer Funk allowed Licensee to go to the bathroom, where she was away for approximately five minutes. (R.R. at 56a.) When Licensee returned from the bathroom, Officer Funk re-read the warnings from the DL–26 Form, during which Licensee began crying. (R.R. at 27a, 56a.) Officer Funk next asked Licensee to take the chemical test five different times, but she did not respond to his requests. (R.R. at 56a.) After waiting two minutes for Licensee to respond, Officer Funk deemed Licensee's conduct a refusal to submit to chemical testing. (R.R. at 27a, 55a.) When Officer Funk left the booking room, Licensee carried on a conversation with the booking officer, where she asked questions and indicated that she wanted an attorney. (R.R. at 56a.)

After receiving notice that Licensee refused to submit to chemical testing, DOT mailed her a notice on August 7, 2012, advising her that her driving privileges were being suspended for a period of twelve months, effective September 11, 2012, pursuant to section 1547(b)(1)(i) of the Vehicle Code. (R.R. at 6a.) Licensee filed a timely appeal, and on December 12, 2012, the trial court held a *de novo* hearing. (R.R. at 10a.)

At the hearing, Officer Funk testified that the hit-and-run collision occurred at approximately 1:34 a.m. (R.R. at 26a.) He then testified that he and Licensee arrived at Cumberland County Prison at 2:30 a.m., and he read Licensee the DL–26 Form at approximately 2:32 a.m. (R.R. at 27a.) Officer Funk testified that at 2:41 a.m., he determined that Licensee had refused to submit to chemical testing. (R.R. at 27a.) Officer Funk stated that although Licensee did not verbally refuse to take the test, he considered her conduct in failing to respond to his requests to take the test as evidencing a refusal. (R.R. at 27a–28a.)

DOT admitted a video recording of the booking into evidence. (R.R. at 24a–25a.) The recording showed Officer Funk reading the warnings from the DL–26 Form, after which Licensee was given a five-minute bathroom break. (R.R. at 25a, 56a.) When Licensee returned, Officer Funk re-read the warnings, Licensee began to cry, and Officer Funk requested that Licensee submit to testing five times. (R.R. at 56a.) After approximately two minutes of waiting, Officer Funk determined that her lack of a response constituted a refusal. (R.R. at 32a–34a, 56a.)

By order dated December 13, 2012, the trial court dismissed Licensee's appeal. The trial court determined that: (1) Offi-

---

**2.** Form DL–26 contains the chemical testing warnings required by section 1547 of the Vehicle Code, 75 Pa.C.S. § 1547, pursuant to our Supreme Court's decision in *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989). These warnings inform a motorist that he or she is under arrest; that he or she is being requested to submit to a chemical test; that he or she will lose his or her operating privileges and potentially face stricter criminal penalties if the request is refused; and that there is no right to remain silent or speak to an attorney.

cer Funk had reasonable grounds to believe that Licensee was operating or physically controlling a vehicle while under the influence of alcohol; (2) Officer Funk requested Licensee to submit to a chemical test on multiple occasions; (3) Licensee refused to do so by not responding to the requests; and (4) Licensee was warned that she may lose her license if she did not submit to the tests. (R.R. at 48a, 58a–59a.)

On appeal to this Court,[3] Licensee argues that the trial court erred in concluding that she refused to submit to chemical testing. Relying on *Bomba v. Department of Transportation, Bureau of Driver Licensing*, 28 A.3d 946 (Pa.Cmwlth.2011), Licensee argues that her actions do not demonstrate an attempt to deliberately delay or undermine the testing process because the Commonwealth still had close to an hour to obtain a blood sample for purposes of section 3802 of the Vehicle Code.[4] Licensee claims that she became emotional when faced with the gravity of the situation, asserts that when she returned from the bathroom she was only provided with two minutes to submit to the chemical testing, and argues that Officer Funk should have given her more time before recording the refusal.

In order to sustain a suspension of operating privileges under section 1547 of the Vehicle Code, DOT must establish that: (1) the licensee was arrested for drunken driving by a police officer who had reasonable grounds to believe that the motorist was operating a motor vehicle while under the influence of alcohol; (2) the licensee was requested to submit to a chemical test; (3) the licensee refused to submit; and (4) the licensee was warned that refusal would result in a license suspension. *Broadbelt v. Department of Transportation, Bureau of Driver Licensing*, 903 A.2d 636, 640 (Pa.Cmwlth.2006). The only issue in this appeal is whether Licensee refused to submit to chemical testing.

In proving whether a licensee refused to submit to chemical testing, DOT has the burden of showing that the licensee was offered a meaningful opportunity to submit to chemical testing. *Petrocsko v. Department of Transportation, Bureau of Driver Licensing*, 745 A.2d 714, 716 (Pa.Cmwlth.2000). If DOT satisfies its burden, the licensee must establish that the refusal was not knowing or conscious or that the licensee was physically unable to take the test. *Broadbelt*, 903 A.2d at 640.

Whether a motorist refused to submit to a chemical test is a question of law that depends on the factual determinations of the trial court. *Hudson v. Department of Transportation, Bureau of Driver Licensing*, 830 A.2d 594, 599 (Pa.Cmwlth. 2003); *Department of Transportation, Bureau of Traffic Safety v. Mumma*, 79 Pa. Cmwlth. 108, 468 A.2d 891, 892 (1983). It is well-settled that "anything less than an unqualified, unequivocal assent" to submit

---

3. Our scope of review is limited to determining whether the findings of fact are supported by competent evidence or whether the trial court committed an error of law or an abuse of discretion in reaching its decision. *Piasecki v. Department of Transportation, Bureau of Driver Licensing*, 6 A.3d 1067, 1070 (Pa. Cmwlth.2010).

4. Sections 3802 of the Vehicle Code provides that an individual may not drive, operate, or be in physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is over the respective statutory threshold percentage within two hours after the individual has driven, operated, or been in actual physical control of the movement of the vehicle. 75 Pa. C.S. § 3802.

to testing constitutes a refusal to do so. *Department of Transportation v. Renwick,* 543 Pa. 122, 131, 669 A.2d 934, 938 (1996); *Lanthier v. Department of Transportation, Bureau of Driver Licensing,* 22 A.3d 346, 348 (Pa.Cmwlth.2011); *Miele v. Commonwealth,* 75 Pa.Cmwlth. 130, 461 A.2d 359, 360 (1983). Furthermore, police officers are not required to spend time either cajoling an arrestee or waiting for her to change her mind. *Department of Transportation, Bureau of Traffic Safety v. Ferrara,* 493 A.2d 154, 157 (Pa.Cmwlth.1985).

■ It is also well-settled that silence can constitute a refusal. *Renwick,* 543 Pa. at 131, 669 A.2d at 939 (holding that by closing her eyes, turning her head, and ignoring the requests, licensee refused to submit to chemical testing); *Broadbelt,* 903 A.2d at 641. In *Broadbelt,* the licensee was given approximately twelve minutes to consider the warnings by the officer and was repeatedly asked to submit to blood testing. This Court held that the licensee was given a meaningful opportunity to ask questions and read the warnings and that his silence constituted a refusal. We reasoned that police officers have no duty to ensure that the licensee understands the warnings and reaffirmed that anything less than an unqualified, unequivocal assent constitutes a refusal. *Id.*

■ Here, Licensee was given a meaningful opportunity to understand the warnings in the DL–26 Form and consent to chemical testing. Officer Funk read the warnings in full to Licensee before she went to the bathroom and then again when she returned. Officer Funk provided Licensee with an opportunity to read the warnings and to ask questions, and Licensee never indicated that she did not understand the warnings. Although Licensee was given only two minutes after she returned from the bathroom to assent, approximately nine minutes elapsed from when Officer Funk first read the warnings until his fifth request that Licensee submit to testing. We reaffirm that police officers are not required to spend time either cajoling an arrestee or waiting for her to change her mind. *Ferrara,* 493 A.2d at 156–57. Similar to the situation in *Broadbelt* Licensee was provided with ample opportunities to consent to chemical testing, but she instead decided to ignore the requests and never made any indication that she assented to take the test.

Licensee's reliance on *Bomba* is misplaced. In *Bomba,* the licensee was arrested for DUI, and after being administered the warnings on the DL–26 Form, the licensee consented to a breath test. A booking officer administered a breath test, but the licensee did not provide a sufficient breath sample. The booking officer informed the licensee that the failed breath test constituted a refusal, and the officer refused to offer a second test. After the licensee was informed that she was deemed to have refused the test, the licensee pleaded with the booking officer for another chance to take the test. The licensee testified that she was very upset from her arrest and that it affected her ability to provide a breath sample on the first test. The trial court credited the licensee's testimony and found that the licensee did not refuse the test because she made a good faith but unsuccessful attempt to provide a breath sample and immediately requested to take the test again. On appeal, this Court affirmed. We concluded that the facts as found by the trial court established that the licensee did not refuse the test and that her conduct did not delay or evidence a deliberate attempt to undermine the testing process. *Id.* at 949.

The facts of *Bomba* are readily distinguishable from the facts of the present case. Unlike the licensee in *Bomba,* Licensee here did not manifest any kind of

assent or willingness to take the test at any point during the booking or after any of Officer Funk's five requests to submit to chemical testing. Licensee argues that, like the licensee in *Bomba*, she did not deliberately delay or undermine the testing process and therefore did not refuse the chemical test. However, in this case, the trial court specifically found that Licensee's conduct demonstrated a refusal and that her failure to submit to testing was an attempt to delay the testing process. The trial court's findings in this regard are supported by the record and render *Bomba* factually inapposite.

Citing *Bomba*, Licensee also argues that because she was still within the two hour limit for obtaining a chemical sample as required under section 3802 of the Vehicle Code, Officer Funk should have given her more time to regain her composure and consent. Licensee suggests that we extend a portion of our reasoning in *Bomba* to the present facts and adopt a *per se* rule that gives arrestees more time to consent so long as they are within the statutory two-hour limit to perform the chemical testing. We decline Licensee's invitation to do so. Our decision in *Bomba* never adopted such a rule, and this Court has never suggested that an arrestee must be provided with a specific time span in which to consent to testing. Instead, this Court has routinely held that a licensee must only be afforded "a meaningful opportunity" to assent to testing. *Petrocsko*, 745 A.2d at 717. As explained above, the trial court found that Licensee had a meaningful opportunity to assent to testing; never affirmatively consented to testing, and was purposefully unresponsive to Officer Funk's requests. Accordingly, we conclude that *Bomba* is limited by its unique facts and is inapplicable here.

For the above-stated reasons, we hold that the trial court did not err in determin-ing the Licensee's silence constituted a refusal under section 1547 of the Vehicle Code. Licensee does not attempt to negate her refusal by arguing that her refusal was not knowing or conscious or that she was physically unable to take the test. Finally, Licensee does not dispute that DOT fulfilled its burden of proof with respect to the other elements of section 1547.

Accordingly, we affirm.

## ORDER

AND NOW, this 31st day of July, 2013, the December 13, 2012 order of the Court of Common Pleas of Cumberland County is affirmed.