IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Debbie Smith,                                    :
                    Appellant               :
                                                 :
          v.                                     :    No. 308 C.D. 2015
                                                 :    Submitted: July 24, 2015
Commonwealth of Pennsylvania,         :
Department of Transportation,             :
Bureau of Driver Licensing                :


BEFORE:    HONORABLE DAN PELLEGRINI, President Judge
           HONORABLE MARY HANNAH LEAVITT, Judge
           HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE LEAVITT                                      FILED: November 4, 2015


          Debbie Smith (Licensee) appeals an order of the Court of Common

Pleas of Mercer County (trial court) denying her appeal of a one-year suspension

of her driving privileges imposed by the Pennsylvania Department of

Transportation (PennDOT) pursuant to the Implied Consent Law.  *See* Section

1547(b)(1) of the Vehicle Code, 75 Pa. C.S. §1547(b)(1).[1]  Because PennDOT

established that Licensee refused to consent to chemical testing upon her arrest for

driving under the influence, we affirm.

---

[1] Section 1547(b)(1) states in relevant part: "If any person placed under arrest for a violation of
section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not
be conducted but upon notice by the police officer, the department shall suspend the operating
privilege of the person."  75 Pa. C.S. §1547(b)(1).

On May 10, 2014, Patrolman Ryan Chmura initiated a traffic stop of a vehicle operated by Licensee. As he was speaking with Licensee, Chmura detected an odor of alcohol and observed that Licensee had watery eyes. Chmura administered a series of field sobriety tests, which Licensee failed. After Licensee failed the field sobriety tests, Chmura placed her in the back of the patrol car and read aloud the Implied Consent warnings from Form DL-26.[2] Licensee asked to call her family or talk to an attorney. Chmura denied Licensee's request and asked if she would submit to a blood screen. Licensee agreed.

While in an exam room at the hospital, Chmura asked Licensee to sign the DL-26 Form. Licensee refused to sign the form. Licensee then became argumentative and asked to call her family. Chmura denied her request and asked whether Licensee was still willing to submit to a blood screen. Licensee did not respond. Chmura informed Licensee that her silence would be interpreted as a refusal. Licensee remained silent. Chmura escorted Licensee out of the hospital,

---

[2] The DL–26 Form provides the following information:

> (1) the licensee is under arrest for DUI in violation of Section 3802(a) of the Vehicle Code; (2) the officer is requesting a chemical test of a particular type (blood, urine, etc.); (3) it is the officer's duty to inform the licensee that, if the licensee refuses to submit to the chemical test, the licensee's operating privileges will be suspended for at least one year, that if the licensee refuses and is convicted or pleads guilty to violating Section 3802(a) of the Vehicle Code (related to impaired driving), the licensee is subject to more severe penalties, the same as if he was convicted of driving with the highest rate of alcohol; and (4) it is the officer's duty to inform the licensee that the licensee does not have the right to speak with an attorney, or anyone else, before deciding whether to submit and that any request to speak to an attorney or anyone else after being provided the warnings or remaining silent when asked to submit to chemical testing will constitute a refusal, resulting in the suspension of the licensee's operating privileges and other enhanced criminal penalties if convicted of impaired driving.

*Sitoski v. Department of Transportation, Bureau of Driver Licensing*, 11 A.3d 12, 16 n.2 (Pa. Cmwlth. 2010).

at which point Licensee began to cry and indicated that she would take the blood screen. Chmura responded that it was too late.

On May 26, 2014, PennDOT notified Licensee that it was suspending her vehicle operating privileges for a period of one year. Licensee appealed her suspension to the trial court and a hearing was held on December 5, 2014. Chmura testified on behalf of PennDOT; Licensee did not offer any evidence. At the hearing, Chmura testified as follows regarding his encounter with Licensee at the hospital:

> [Counsel for PennDOT]: Okay. And what do you recall about your request for her to submit to the test?
>
> [Chmura]: I, at first, asked her if she would sign the form to state she had been advised of the warnings. [Licensee] became argumentative. She wasn't signing anything. She needed to call her daughter. She needed her phone. She didn't have her eyeglasses. Basically very argumentative with anything that I asked her to do.
>
> [Counsel for PennDOT]: What did you tell her, if anything, with regards to her request to speak to her daughter?
>
> [Chmura]: That she was not permitted to do so. She was not permitted to call anybody until she took the test.
>
> [Counsel for PennDOT]: Okay. What was her response when you said that to her?
>
> [Chmura]: She continued to argue with me. Eventually I told her that I was asking her one more time if she was going to take the test, a yes or no response was needed, and if she remained silent, that it would be taken as a refusal. When I said that, she sat there for approximately ten seconds, silent, and I told her that was being taken as a refusal, and she was re-secured in handcuffs at that time.

3

***

[Counsel for PennDOT]: Okay.  When you left the hospital, did she make any statement to you that she wanted to take the test?

[Chmura]: She was crying.  She wanted to take the test.  She had kids.  She couldn't lose her job, and I told her she had been provided an opportunity to take the test, and she had chose [sic] not to.

Reproduced Record at 12-14 (R.R. ___).  After the hearing, the trial court denied Licensee's appeal.  Claimant appealed to this Court.[3]

On April 14, 2015, the trial court issued an opinion pursuant to Pa. R.A.P. 1925(a) offering the following rationale for denying Licensee's appeal:

It is uncontroverted here, that the [L]icensee was given the implied consent warnings verbatim from the DL-26 chemical test warnings form at the scene of the stop where she consented to a BAC.  However, upon arrival at the hospital she became argumentative over a twenty minute period and, despite instructions to the contrary, she kept asking to talk to her children, an attorney, plus other evasive conduct, but did nothing to reinforce her original consent.  In fact, all of her actions and her demeanor, ending with her silence when given one last opportunity to consent, demonstrate that she did not give an unqualified and/or unequivocal assent to a BAC after being given a meaningful opportunity to comply with Section 1547.

Trial court opinion at 3 – 4.  For these reasons, the trial court concluded that Licensee had refused chemical testing in violation of the Implied Consent Law at Section 1547(b)(1) of the Vehicle Code, 75 Pa. C.S. §1547(b)(1).

---

[3] Licensee initially appealed to the Superior Court. However, the matter was transferred to this Court on March 10, 2015.

On appeal,[4] Licensee contends that the trial court erred in concluding that Licensee refused her consent to the blood screen. According to Licensee, she refused only for a short time but eventually assented to the test. The only reason she did not take the test was because Officer Chmura refused to administer it. PennDOT counters that the record supports the trial court's determination that Licensee failed to give an unequivocal and unqualified assent to the chemical test.

Pursuant to Section 1547 of the Vehicle Code, this Court will sustain a licensee's suspension only when PennDOT has established that the licensee:

> (1) was arrested for driving under the influence of alcohol; (2) was asked to submit to a breathalyzer test; (3) refused to do so; and (4) was specifically warned that a refusal would result in the revocation of [her] driver's license.

*Department of Transportation, Bureau of Driver Licensing v. Scott*, 684 A.2d 539, 542 (Pa. 1996) (quoting *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873, 876 (Pa. 1989)). Licensee's challenge is limited to the third factor, *i.e.*, whether PennDOT met its burden of proving she refused to consent to chemical testing.

It is well settled that when the police request the operator of a motor vehicle, who has been arrested for driving under the influence of alcohol, to submit to chemical testing, anything substantially less than an unqualified, unequivocal assent by the licensee to the officer's request will constitute a refusal. *Department of Transportation v. Renwick*, 669 A.2d 939 (Pa. 1996). "The occasion is not one

---

[4] Our review in license suspension cases is to determine whether the trial court's factual findings are supported by competent evidence, the trial court committed an error of law, or the trial court abused its discretion. *Department of Transportation, Bureau of Driver Licensing v. Scott*, 684 A.2d 539, 542 (Pa. 1996).

5

for debate, maneuver or negotiation, but rather a simple 'yes' or 'no' to the officer's request." *Commonwealth v. Morris*, 280 A.2d 658, 660 (Pa. Super. 1971). As such, a licensee's silence in response to a request for chemical testing is considered a refusal for purposes of Section 1547. *Grogg v. Department of Transportation, Bureau of Driver Licensing*, 79 A.3d 715, 719 (Pa. Cmwlth. 2013). "Furthermore, police officers are not required to spend time either cajoling an arrestee or waiting for her to change her mind." *Id*.

In support of her position, Licensee likens her situation to that of the licensee in *Department of Transportation, Bureau of Traffic Safety v. Tillitt*, 411 A.2d 276 (Pa. Cmwlth. 1980). In *Tillitt*, the licensee was arrested for driving under the influence and brought to a police station. At the station, the arresting officer asked the licensee if he would take a breathalyzer test. The licensee initially said no, but then asked what would happen if he refused. The officer informed the licensee that his license would be suspended. This information prompted a change of heart in the licensee, and he quickly requested to take the breathalyzer. However, the officer told the licensee that "[w]e're not here to play games" and refused to administer the breathalyzer test. *Id*. at 277. The licensee's license was suspended.

On appeal, the licensee argued that because he had consented to the breathalyzer test once he learned of the consequences of his refusal, it was unfair for PennDOT to suspend his license. This Court agreed. We stated that a licensee could not accept or refuse chemical testing until he had been informed of the potential consequences. Because the licensee's initial refusal occurred before the officer told him the consequences of refusal, the officer should have permitted licensee to change his mind.

6

In the matter *sub judice*, Licensee contends that she assented to taking the blood screen as Officer Chmura escorted her out of the hospital. According to Licensee, *Tillitt* stands for the proposition that a licensee is permitted to refuse chemical testing for a short duration so long as the refusal is immediately followed by unequivocal consent. This is not the principle established in *Tillitt*. Rather, this Court accepted the licensee's final assent in *Tillitt* because his initial rejection was made without knowing the consequences of refusal. Here, Licensee knew the consequences of her refusal prior to withholding her consent to chemical testing at the hospital. Therefore, we reject Licensee's reliance upon *Tillitt*. Instead, we find the matter *sub judice* more similar to *Grogg*, 79 A.3d 715.

In *Grogg*, the licensee was arrested for driving under the influence and taken into custody. At the county prison, the arresting officer informed the licensee that refusal to submit to a chemical test would result in a license suspension. In response, the licensee requested to use the bathroom, where she remained for five minutes. When the licensee returned, the officer asked her five more times if she would consent to chemical testing. The licensee continued to remain silent. Her silence was deemed a refusal and her license was suspended. On appeal, this Court affirmed the suspension and explained that

> [the l]icensee was given a meaningful opportunity to understand the warnings in the DL-26 Form and consent to chemical testing. [The officer] read the warnings in full to [the l]icensee before she went to the bathroom and then again when she returned. [The officer] provided [the l]icensee with an opportunity to read the warnings and to ask questions, and [the l]icensee never indicated that she did not understand the warnings. Although [the l]icensee was given only two minutes after she returned from the bathroom to assent, approximately nine minutes elapsed from when [the officer] read the warnings until his fifth request that [the l]icensee submit to testing. We

> reaffirm that police officers are not required to spend time either cajoling an arrestee or waiting for her to change her mind.

*Grogg*, 79 A.3d at 719.

As in *Grogg*, Licensee was asked multiple times to consent to chemical testing and informed of the consequences of her refusal. Each time, Licensee remained silent. Moreover, Licensee had at least twenty minutes to decide whether to submit to chemical testing, which is more than twice the amount of time afforded the licensee in *Grogg*. Officer Chmura had no reason to believe Licensee would consent to chemical testing as he escorted her from the hospital after her lengthy silence. The officer was "not required to spend time either cajoling [Licensee] or waiting for her to change her mind." *Id*. Thus, the trial court did not err in concluding that Licensee refused chemical testing.

For these reasons, the order of the trial court is affirmed.

_____
MARY HANNAH LEAVITT, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Debbie Smith, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 308 C.D. 2015 |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Bureau of Driver Licensing | : | |

# **O R D E R**

AND NOW, this 4th day of November, 2015, the order of the Court of Common Pleas of Mercer County dated December 5, 2014, in the above-captioned matter is hereby AFFIRMED.

_____
MARY HANNAH LEAVITT, Judge