# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Drake Fleet,                                          :
                  Appellant            :
                                :
          v.                                      :    No. 1025 C.D. 2021
                                :    SUBMITTED:  August 5, 2022
Commonwealth of Pennsylvania,                        :
Department of Transportation,                        :
Bureau of Driver Licensing                           :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE ELLEN CEISLER, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**             **FILED:  November 7, 2022**


Licensee Drake Fleet appeals from an order of the Court of Common Pleas of York County dismissing his appeal from a one-year suspension of his operating privilege pursuant to Section 1547(b)(1)(i) of the Vehicle Code, 75 Pa.C.S. § 1547(b)(1)(i),[1] imposed by the Commonwealth of Pennsylvania, Department of

---

[1] Section 1547(b)(1)(i) states:

> (1) If any person placed under arrest for a violation of [S]ection 3802 [(relating to driving under the influence of alcohol or a controlled substance)] is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the [D]epartment shall suspend the operating privilege of the person as follows:
>
> > (i) Except as set forth in subparagraph (ii), for a period of 12 months.

**(Footnote continued on next page…)**

Transportation, Bureau of Driver Licensing because Licensee refused to submit to chemical testing in connection with his arrest for driving under the influence of alcohol or a controlled substance (DUI).  Upon review, we affirm.

By notice mailed on October 2, 2020, the Department informed Licensee that it was suspending his operating privilege for one year pursuant to Section 1547(b)(1)(i) of the Vehicle Code for refusing a chemical test on September 16, 2020.  Licensee appealed the suspension and the trial court held a *de novo* hearing.

At the hearing, the Department presented the testimony of the arresting officer, Trooper Dylan Adams of the Pennsylvania State Police, whom the trial court found to be credible.  Trooper Adams testified that he had been with the State Police for over 4 years and had been involved in approximately 100 to 120 DUI arrests and investigations.  On September 16, 2020, Trooper Adams was on patrol driving westbound on Dunkard Valley Road when he saw a black Nissan Ultima touch the double yellow line once and then cross over the double yellow line twice while negotiating curves.  When the vehicle came to an intersection it failed to stop at the stop sign, instead stopping beyond it within the crosswalk.  Trooper Adams then engaged his emergency lights and sirens and attempted to make a traffic stop; however, the vehicle failed to stop and drove for approximately one mile before stopping at Licensee's residence.

Trooper Adams approached the car and ordered Licensee out of the vehicle, but Licensee refused so Trooper Adams removed him from the vehicle. Trooper Adams noticed that Licensee appeared "a little relaxed for the scenario[,]" his eyes were bloodshot, and he tripped over his own feet when getting out of the

---

75 Pa.C.S. § 1547(b)(1)(i).

2

car. Notes of Testimony, 8/17/21 (N.T.) at 9. Trooper Adams also detected an odor of marijuana emanating from both Licensee and the inside of the car.[2]

Based upon these circumstances Trooper Adams conducted a search of Licensee's vehicle. Counsel for Licensee objected to testimony regarding the results of the search, arguing that because it was conducted without a warrant any evidence found during the search was obtained unlawfully and in derogation of Licensee's protections against unreasonable search and seizure pursuant to Article 1, Section 8 of the Pennsylvania Constitution.[3] The trial court overruled the objection and Trooper Adams testified that during the search of Licensee's vehicle he found rolling papers on the front passenger floor; a scale in the rear passenger area; and a backpack behind the driver's seat which contained a clear mason jar with "marijuana crumbs." N.T. at 13. Trooper Adams explained that he was able to identify the substance as marijuana through his training and experience with the State Police.

Trooper Adams then placed Licensee in his patrol car and transported him to Central Booking for a blood test. After arriving at Central Booking, Trooper Adams read the DL-26 form to Licensee verbatim, including the statement that

---

[2] Trooper Adams explained that he was trained at the State Police Academy to identify the odor of marijuana, and he was familiar with it through multiple DUIs involving marijuana and arrests for possession of the drug.

[3] Article I, Section 8 provides:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Pa. Const. art I, § 8. While Licensee's counsel also objected based upon the Fourth Amendment, this ground has been abandoned on appeal. *See* Licensee's Br. at 1.

3

Licensee was under arrest for DUI and warning that Licensee would lose his operating privilege if he refused chemical testing. Trooper Adams then gave the form to Licensee when he requested to read it for himself, after which Licensee refused the blood test and refused to sign the DL-26 form. While Trooper Adams was not able to remember Licensee's exact words, he testified repeatedly that Licensee refused the test. The Department also introduced into evidence a certified packet of documents including Licensee's driving history, the Department's suspension notice, and the DL-26 form read to Licensee and signed by Trooper Adams, which noted Licensee's refusal.[4]

For his part, Licensee testified that on the night in question, he called his mother after realizing he was being followed, concerned about any interaction with the police given that Licensee is African-American. She told Licensee to come to the house and she and his father would make sure he was safe, and that is why Licensee did not immediately pull his car over. Once parked at his residence, Licensee heard aggressive banging on the car door and someone saying get out of the car now. Licensee was then taken out of the vehicle and thrown on the ground. While Trooper Adams handcuffed Licensee before searching his car, Licensee claims that when he was placed in the patrol car he was not told he was under arrest for DUI or that any testing would be done.

Licensee admits that right before entering the booking room Trooper Adams told him that if he did not take the blood test right now his license would be immediately suspended. He also admits that Trooper Adams read the DL-26 form to him; however, Licensee asked to read the form himself because he looks at

---

[4] While Licensee's reproduced record includes the transcript of the trial court proceedings, it does not include these documents. Further, Licensee's reproduced record is not paginated pursuant to Pa.R.A.P. 2173.

4

everything he signs. Licensee testified that he was confused, did not know what was going on, and was reading the form really slowly. According to Licensee, he said something along the lines of "do what you have to do," after which Trooper Adams took the form back and exited the room. N.T. at 47. Licensee claims he never said no, he was not giving blood, and that his comment was intended as a consent to the chemical test.

The trial court orally dismissed Licensee's appeal on the record at the conclusion of the hearing and subsequently entered an order to this effect. Licensee then appealed to this Court. After receiving Licensee's statement of errors complained of on appeal (Statement), the trial court issued an opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), Pa.R.A.P. 1925(a). Therein, the trial court stated that there were reasonable grounds to arrest Licensee for driving under the influence and to request that he submit to chemical testing given Trooper Adams' credible testimony. The trial court specifically credited Trooper Adams' testimony that Licensee refused the test, even though he could not recall the exact words used. Further, the trial court did not find credible Licensee's claim that, in response to the reading of the DL-26 form, Licensee stated "do what you have to do." Trial Court Opinion, 12/2/21, at 3. Notwithstanding, the trial court noted that such a statement is not indicative of a positive response as Licensee "could have just as likely been saying 'I'm not going to give a sample, so do what you have to do.'" *Id.* at 4.[5]

Before this Court, Licensee argues that the trial court erred in determining that Trooper Adams had reasonable grounds to request a chemical test, in part because it considered evidence that was allegedly obtained in violation of

---

[5] We note that the trial court granted Licensee's application for supersedeas and reinstated his operating privilege pending this appeal.

Article I, Section 8 of the Pennsylvania Constitution. Licensee further maintains that the trial court erred in finding that he was afforded a meaningful opportunity to submit to a blood test and refused to do so, claiming his brief hesitation does not constitute a refusal when considering the specific circumstances of the encounter.

Before delving into the merits, we must address the Department's contention that Licensee waived his argument regarding reasonable grounds and Article I, Section 8 of the Pennsylvania Constitution because he failed to raise it in his Statement. Licensee's Statement provides the following four errors complained of on appeal:

> A. The [t]rial [c]ourt erred in dismissing the appeal of his operating privilege[] because there was insufficient evidence for the [c]ourt to find that dismissal of the appeal and reinstating the suspension was appropriate based on the record.
>
> B. The [t]rial [c]ourt erred in finding that [Licensee] was provided with a meaningful, reasonable, and sufficient opportunity to make a knowing and conscious choice between providing voluntary consent to a chemical test or accepting the consequences that will follow from the refusal because his reluctance to submit or brief hesitation does not constitute refusal when viewing the specific circumstances of the encounter.
>
> C. The [t]rial [c]ourt erred when it determined that [Licensee] refused to provide a chemical sample when [Licensee] in fact did not say no to providing a sample and told the Trooper to do what he had to do.
>
> D. The [t]rial [c]ourt erred when it determined that the protections of . . . Article I, Section 8 and the exclusionary rule applied [sic] to civil proceedings.

O.R., Item No. 4, Statement of Errors.

6

The Department bases its argument on Pa.R.A.P. 1925(b)(4)(vii), which provides: "Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." The Department's argument, however, neglects the subparagraph immediately prior, which states, in pertinent part: "Each error identified in the Statement will be deemed to include every subsidiary issue that was raised in the trial court[] . . . ." Pa.R.A.P. 1925(b)(4)(v). Here, while the language used to frame the issues is not exactly the same, Licensee's first argument on appeal is subsidiary to issues A and D raised in his Statement. This is especially true given the fact that Licensee argued in-depth before the trial court that Trooper Adams lacked reasonable grounds to request the chemical test because some of the evidence was obtained through a warrantless search of his vehicle, in violation of Article I, Section 8. As such, we find that Licensee did not waive this argument. *See Desher v. Se. Pa. Transp. Auth.*, 212 A.3d 1179, 1185 (Pa. Cmwlth. 2019).

We now turn to the relevant law. Section 1547 of the Vehicle Code, commonly referred to as the Implied Consent Law, permits chemical testing of drivers under certain circumstances, including driving under the influence of alcohol or a controlled substance. *See* 75 Pa.C.S. § 1547. Of note here, Section 3802(d) precludes a licensee from operating a motor vehicle with "any amount" of a Schedule I controlled substance, such as marijuana,[6] in their system, or a metabolite thereof. 75 Pa.C.S. § 3802(d).

---

[6] Marijuana is defined as a Schedule I controlled substance under Section 104(1)(iv) of The Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. § 780-104(1)(iv).

7

It is well established that to sustain a suspension of a licensee's operating privilege under Section 1547 of the Vehicle Code, the Department bears the burden of establishing that the licensee:

> (1) was arrested for DUI by a police officer with reasonable grounds to believe the licensee was operating a vehicle while under the influence of alcohol or a controlled substance; (2) was requested to submit to chemical testing; (3) refused to submit to chemical testing; and, (4) was warned by the officer that h[is] license will be suspended if []he refused to submit to chemical testing.

*Park v. Dep't of Transp., Bureau of Driver Licensing*, 178 A.3d 274, 280 (Pa. Cmwlth. 2018). The test for whether an officer had reasonable grounds[7] to believe that a licensee was operating a vehicle while under the influence is not very demanding, and it is not necessary for the officer to be correct in his belief. *Gammer v. Dep't of Transp., Bureau of Driver Licensing*, 995 A.2d 380, 384 (Pa. Cmwlth. 2010). Reasonable grounds are established when "a person in the position of the police officer, viewing the facts and circumstances as they appeared at the time, could have concluded that the [licensee] was operating the vehicle while under the influence." *Banner v. Dep't of Transp., Bureau of Driver Licensing*, 737 A.2d 1203, 1207 (Pa. 1999). While there is no set list of behaviors that must be exhibited for an officer to have reasonable grounds for making a DUI arrest, case law has identified factors including swaying, staggering or falling down; slurred speech; uncooperative behavior; glassy or bloodshot eyes; and the odor of alcohol. *See, e.g.*, *Farnack v. Dep't of Transp., Bureau of Driver Licensing*, 29 A.3d 44, 48 (Pa. Cmwlth. 2011); *Pritchett v. Dep't of Transp., Bureau of Driver Licensing*, 267 A.3d 618, 622 (Pa.

---

[7] "Whether reasonable grounds exist is a question of law reviewable by the court on a case by case basis." *Banner v. Dep't of Transp., Bureau of Driver Licensing*, 737 A.2d 1203, 1207 (Pa. 1999).

Cmwlth. 2021). Moreover, an "arresting officer may rely on behavior that indicates the presence of an entirely different chemical, such as a controlled substance, in determining whether he has reasonable grounds to request a[] . . . blood test." *Farnack*, 29 A.3d at 48; *see also Pritchett*, 267 A.3d at 622 (noting the licensee smelled of marijuana).

Here, even *without* considering the evidence obtained during the search of Licensee's vehicle, Trooper Adams had ample reason to believe that Licensee was under the influence of alcohol or a controlled substance. Trooper Adams credibly testified that Licensee's vehicle touched and then crossed the double yellow line twice; failed to stop at a stop sign, instead coming to rest within a crosswalk; and failed to stop for more than a mile after Trooper Adams engaged his emergency lights and siren.[8] Additionally, Trooper Adams detected the odor of marijuana coming from Licensee, and noted that his eyes were bloodshot and he was unusually relaxed given the circumstances. Finally, Licensee tripped over his own feet while exiting his vehicle.[9] The trial court specifically found Trooper Adams' testimony to be credible. Questions of credibility are for the trial court to resolve as fact-finder, and we will not disturb those determinations on appeal. *Factor v. Dep't of Transp., Bureau of Driver Licensing*, 199 A.3d 492, 497 (Pa. Cmwlth. 2018). Based upon

---

[8] Even if Licensee's stated reasons for failing to stop until he reached his home were credited, Trooper Adams' perception of Licensee's behavior is what determines his reasonable belief of Licensee's condition, not Licensee's motives of which Trooper Adams was not aware.

[9] Licensee maintains that he did not trip and was not unsteady on his feet, pointing to video footage from Trooper Adams' patrol car for support. First, we note that the trial court credited the testimony of Trooper Adams in this regard, and not that of Licensee. Moreover, as noted in this Court's Order dated March 4, 2022, and our Memorandum and Order issued May 13, 2022, the video from Trooper Adams' patrol car was never introduced, let alone admitted into evidence before the trial court. As such, it is not part of the record in this matter and was not considered in our ruling. *See* Pa.R.A.P. 1921; *Denver Nursing Home v. Dep't of Pub. Welfare*, 552 A.2d 1160 (Pa. Cmwlth. 1989).

these circumstances, Trooper Adams had reasonable grounds to believe Licensee was driving under the influence of marijuana and to request the chemical test even without considering what was found during the search of Licensee's vehicle. Given this holding, we decline to reach Licensee's argument that the search of his vehicle was unconstitutional and any evidence obtained therefrom should have been excluded. *See Commonwealth v. Herman*, 161 A.3d 194, 209 (Pa. 2017) (noting "the sound tenet of jurisprudence that courts should avoid constitutional issues when the issue at hand may be decided upon other grounds").

Next, we turn to Licensee's claim that he did not refuse the chemical test. "The question of whether a licensee refuses to submit to a chemical test is a legal one, based on the facts found by the trial court." *Factor*, 199 A.3d at 496.

> Once a police officer provides the implied consent warnings to a [licensee], the officer has done all that is legally required to ensure the motorist is fully advised of the consequences of h[is] failure to submit to chemical testing. All that is required is that the officer read the warnings to the licensee and that the licensee be given a meaningful opportunity to comply with the Implied Consent Law.

*Park*, 178 A.3d at 281. Of particular note, "Pennsylvania courts have long and consistently held that anything less than an unqualified, unequivocal assent to submit to chemical testing constitutes a refusal to consent thereto." *Factor*, 199 A.3d at 497. Further, we must view the evidence in a light most favorable to the Department as the party that prevailed before the trial court. *Bradish v. Dep't of Transp., Bureau of Driver Licensing*, 41 A.3d 944, 945 n.3 (Pa. Cmwlth. 2012).

Here, Licensee does not dispute the fact that Trooper Adams read him the DL-26 Form. Licensee also admits that Trooper Adams gave him the form to

read for himself upon request, and that Trooper Adams told him that if he did not submit to the chemical test his license would be immediately suspended. As such, Trooper Adams did what was legally required with respect to the implied consent warnings. *See Park*; *see also Grogg v. Dep't of Transp., Bureau of Driver Licensing*, 79 A.3d 715, 719 (Pa. Cmwlth. 2013) (officer not required to spend time cajoling licensee or waiting for him to change his mind). Licensee's argument that he was confused and was merely trying to clarify his rights by requesting to read the DL-26 Form himself is unavailing since "officers have no duty to ensure that a licensee understands the consequences of refusing a chemical test." *McKenna v. Dep't of Transp., Bureau of Driver Licensing*, 72 A.3d 294, 300 (Pa. Cmwlth. 2013) (further noting that DL-26 Form "does not generate confusion" and "contains sufficient information upon which a licensee can base a decision as to whether to submit to testing"); *see also Grogg*, 79 A.3d at 719 (officers have no duty to ensure licensee understands the warnings).

More importantly, Licensee failed to give an unqualified, unequivocal assent to chemical testing. While Trooper Adams could not recall the exact response Licensee provided, he repeatedly testified that Licensee refused to submit to the chemical test, and his notations made on the DL-26 Form at the time of the incident support this statement. *See Factor*, 199 A.3d at 497-98 (finding no abuse of discretion in trial court's determination that the licensee refused to consent where officer could not recall the exact words used but testified repeatedly that it was a refusal). Licensee's arguments gloss over the fact that the trial court credited Trooper Adams' testimony that he refused the test, and specifically rejected Licensee's claim that he consented by saying something along the lines of "do what you have to do." As such, there are no credible facts of record to support Licensee's

11

argument that he verbally consented to the chemical test or that his "overall conduct demonstrated an overwhelming willingness to assent to testing." Licensee's Br. at 6. We decline Licensee's request to reweigh the evidence presented and find no merit in his argument that the trial court erred in this regard. *See Factor*.[10]

For the above reasons, the trial court properly denied Licensee's license suspension appeal. Accordingly, we affirm.

 

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

 

Judge Wallace did not participate in the decision for this case.

---

[10] We note that Licensee's reliance upon *Petrocsko v. Department of Transportation, Bureau of Driver Licensing*, 745 A.2d 714 (Pa. Cmwlth. 2000) is misplaced as that case is factually distinguishable. *Petrocsko* involved a licensee who initially consented to chemical testing after being arrested for DUI, but subsequently became agitated and stated he would not do so when confronted with a request from hospital staff to sign a form releasing the hospital from liability. Here, Licensee did not initially consent to the chemical test, nor was he presented with a form to sign other than the DL-26 Form.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Drake Fleet,                               :
                    Appellant           :
                                           :
        v.                               :    No. 1025 C.D. 2021
                                           :
Commonwealth of Pennsylvania,  :
Department of Transportation,     :
Bureau of Driver Licensing          :

## **O R D E R**

AND NOW, this 7th day of November, 2022, the order of the Court of Common Pleas of York County in the above-captioned matter is hereby AFFIRMED, and the suspension of Drake Fleet's operating privilege, imposed by the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing, is hereby REINSTATED.

_____

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita