# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Francis Nicholas DiMeo, III,    :

                                   :

                 Appellant    :

                                   :

               v.               : No. 475 C.D. 2022

                                   : Submitted: September 30, 2022

Commonwealth of Pennsylvania,   :

Department of Transportation,    :

Bureau of Driver Licensing       :


BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE STACY WALLACE, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WOJCIK                                FILED: January 4, 2023


Francis DiMeo (Licensee) appeals from the March 29, 2022 order of the Montgomery County Court of Common Pleas (trial court) that denied his appeal from a 12-month suspension of his operating privilege imposed by the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (DOT), under Section 1547(b)(1)(i) of the Vehicle Code, 75 Pa. C.S. §1547(b)(1)(i), based on his refusal to submit to a chemical test.[1] Licensee argues

---

[1] Commonly known as the "Implied Consent Law," Section 1547 of the Vehicle Code states in relevant part:

> (a) General rule.--Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of

**(Footnote continued on next page…)**

that DOT did not meet its burden of showing Licensee was offered a meaningful opportunity to consent to a chemical test. Upon review, we affirm.

By notice mailed January 5, 2021, DOT warned Licensee that his driving privilege would be suspended for 12 months, effective February 9, 2021, based on his refusal to submit to chemical testing on September 9, 2020. Licensee timely appealed to the trial court, which conducted a *de novo* hearing on March 29, 2022.

At the hearing, Plymouth Township Police Officer George Cornick (Arresting Officer) testified for DOT, and his testimony may be summarized as follows. On September 8, 2020, while on patrol, Arresting Officer was dispatched to a Lukoil station for report of a suspicious vehicle. A passerby had reported that a male was unconscious in a vehicle in the entranceway to the gas station. Upon arrival, Arresting Officer located the vehicle in the entranceway. Reproduced

---

determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle:

(1) in violation of section 3802 (relating to driving under influence of alcohol or controlled substance) … .;

＊ ＊ ＊

(b) Suspension for refusal.--

(1) If any person placed under arrest for a violation of Section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted upon notice by the police officer, [DOT] shall suspend the operating privilege of a person as follows:

(i) . . . for a period of 12 months.

75 Pa. C.S. §1547(a)(1), (b)(1)(i).

Record (R.R.) at 10-11.; License Suspension Hearing, 5/23/22, Notes of Testimony (N.T.) at 4-5. Arresting Officer observed the vehicle's headlights and taillights were activated, and the engine was running. N.T. at 5. The operator of the vehicle, who was the sole occupant, had his head tilted back, and his eyes closed. *Id.* Licensee appeared to be unconscious. *Id.* Arresting Officer knocked on the window, but was unable to wake the operator, whom he identified as Licensee. Arresting Officer opened the door and performed sternum rubs until Licensee woke up. *Id.* Arresting Officer asked if Licensee was okay and observed that Licensee's speech was severely slurred. *Id.* Arresting Officer asked Licensee to exit the vehicle; Licensee complied. *Id.* Arresting Officer observed that Licensee had poor balance and he fell against the door. *Id.* As Licensee moved, he fell against one of the other police officers toward the rear of his vehicle who was assisting at the scene. *Id.* At that point, Arresting Officer again attempted to question Licensee. *Id.* Licensee admitted he consumed marijuana earlier that day. *Id.*

Arresting Officer testified that, because of Licensee's indicated toxication and confusion, he thought it was best to take Licensee to the hospital. N.T. at 8. Emergency Medical Services (EMS) arrived and transported Licensee to the hospital for further medical attention. *Id.* at 6. Due to Licensee's level of intoxication, Arresting Officer decided to forgo the administration of the standardized field sobriety tests. *Id.* Arresting Officer testified that, if Licensee had not been taken to the hospital, he would have placed Licensee in custody. *Id.* at 6-7. Licensee was not free to go.[2] *Id.* at 7.

---

[2] One of the officers who was assisting Arresting Officer moved Licensee's vehicle to a legal parking spot. R.R. at 12. During an inventory search of the vehicle, packaging for a marijuana vape pen was found and secured. *Id.*

3

Arresting Officer arrived at the hospital with the ambulance that transported Licensee at around 12:30 or 12:40 a.m. N.T. at 15. Arresting Officer spoke to Licensee when he was in a hospital bed. *Id.* at 14. Arresting Officer testified that Licensee was more alert than he was on the scene. *Id.* at 9. Arresting Officer read a Pennsylvania DL-26B blood test form (DL-26B form) to Licensee verbatim. *Id.* at 6. Licensee asked Arresting Officer questions, including whether he could speak to a lawyer. *Id.* at 6. Arresting Officer re-read the last warning on the DL-26B form to Licensee. *Id.* The last warning on the DL-26B form states:

> You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a blood test, you will have refused the test.

R.R. at 32.

Arresting Officer testified that Licensee asked what Arresting Officer felt was best for him, and Arresting Officer told him that he could not make that decision for him. N.T. at 6. Licensee verbally refused the chemical test. *Id.* at 6.

Licensee did not testify or present a medical witness. Instead, Licensee offered the hospital records, which the trial court admitted over DOT's hearsay objections. N.T. at 12. Licensee argued that he did not have a meaningful opportunity to consent. Licensee further asserted that the alleged refusal was not knowing at the time. *Id.* at 15-16. In support of these arguments, Licensee relied on the hospital records, which indicated that he was in a confused state that existed around 12:30 or 12:40 a.m. to around 4:54 a.m., he could not remember any phone numbers, and his gait was unsteady. *Id.*

4

Based on the testimony and evidence presented, the trial court found the following facts. Arresting Officer read the DL-26B form verbatim to Licensee at the hospital. Trial Court 5/23/2022 Opinion at 2. Licensee was more alert at the hospital than he was at the scene. *Id.* Licensee refused to submit to a chemical test and signed the DL-26B form. The DL-26B form clearly states the consequences of a refusal. *Id.* at 3. Relying on *Department of Transportation v. Renwick*, 669 A.2d 934, 939 (Pa. 1996), the trial court concluded it is well settled that anything less than an unqualified, unequivocal assent constitutes a refusal under Section 1547 of the Vehicle Code. *Id.* Accordingly, the trial court held that DOT met its burden of showing that Licensee was offered a meaningful opportunity to submit to the blood test, and that Licensee did not meet his burden to show his refusal was not knowing or conscious. *Id.* at 4. Thus, the trial court denied Licensee's appeal to rescind the suspension.

On appeal to this Court,[3] Licensee argues that the trial court erred by disregarding the hospital records demonstrating Licensee's confusion. When this evidence is considered, Licensee contends that DOT did not meet its burden of

[3] The issue of whether a licensee refused to submit to a chemical test is a question of law subject to plenary review by this Court. *Mueller v. Department of Transportation, Bureau of Driver Licensing*, 657 A.2d 90, 93 (Pa. Cmwlth. 1995). Our scope of review is limited to "determining whether the trial court's findings are supported by substantial evidence, whether errors of have been committed, or whether the trial court's determinations demonstrate a manifest abuse of discretion." *McCloskey v. Department of Transportation, Bureau of Driver Licensing*, 722 A.2d 1159, 1161 (Pa. Cmwlth. 1999).

"Review for capricious disregard of material, competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the court." *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 812 A.2d 478, 487 (Pa. 2002). Capricious disregard occurs only when the fact-finder deliberately ignores relevant, competent evidence. *Id.* Where substantial evidence supports the findings, and those findings in turn support the conclusions, it should remain a rare instance where an appellate court disturbs an adjudication based on capricious disregard. *Id.*

showing Licensee was offered a meaningful opportunity to comply with Section 1547 of the Vehicle Code. We disagree.

To begin our analysis, we note that it is not the province of this Court on appellate review to make new or different findings of fact. *Reinhart v. Department of Transportation, Bureau of Driver Licensing*, 954 A.2d 761, 765 (Pa. Cmwlth. 2008). If the trial court's findings are supported by the evidence, we are precluded from disturbing them. *Id.* In addition, we must view the evidence in a light most favorable to the party that prevailed before the trial court. *Id.* It is clear that determinations as to witness credibility and the weight assigned to the evidence are matters within the province of the trial court as fact-finder. *Id.* The trial court may accept or reject the testimony of any witness, either in whole or in part. *Id.*

To sustain a suspension of a licensee's operating privilege under the Implied Consent Law, DOT must establish that (1) the driver was arrested for driving under the influence (DUI) by a police officer with reasonable grounds to believe the licensee was operating a vehicle while under the influence of alcohol or a controlled substance; (2) the driver was asked to submit to a chemical test; (3) the driver refused to take the chemical test; and (4) the driver was specifically warned that refusing the test would result in the revocation of his or her driver's license. *Banner v. Department of Transportation, Bureau of Driver Licensing*, 737 A.2d 1203, 1206 (Pa. 1999). In proving whether a licensee refused to submit to chemical testing, DOT has the burden of showing that the licensee was offered a meaningful opportunity to submit to chemical testing. *Petrocsko v. Department of Transportation, Bureau of Driver Licensing*, 745 A.2d 714, 716 (Pa. Cmwlth. 2000).

Whether a motorist refused to submit to a chemical test is a question of law that depends on the factual determinations of the trial court. *Hudson v.*

6

*Department of Transportation, Bureau of Driver Licensing*, 830 A.2d 594, 599 (Pa. Cmwlth. 2003). Police officers are not required to spend time either cajoling an arrestee or waiting for him to change his mind. *Grogg v. Department of Transportation, Bureau of Driver Licensing*, 79 A.3d 715, 718 (Pa. Cmwlth. 2013). A reading of the DL-26 form sufficiently apprises the driver, either hearing or reading it, that if he refuses to submit to the chemical test, his operating privilege will be suspended. *Quigley v. Department of Transportation*, *Bureau of Driver Licensing*, 965 A.2d 349, 353 (Pa. Cmwlth. 2009). It is well settled that "anything less than an unqualified, unequivocal assent" to submit to testing constitutes a refusal to do so. *Renwick*, 669 A.2d at 938.

Once DOT meets its burden, the burden then shifts to the Licensee to prove that he was physically incapable of taking the chemical test or that the refusal was not knowing or conscious. *Kollar v. Department of Transportation*, *Bureau of Driver Licensing*, 7 A.3d 336, 339 (Pa. Cmwlth. 2010). The determination of whether a licensee was able to make a knowing and conscious refusal is a factual one that is to be made by the trial court. *Barbour v. Department of Transportation, Bureau of Driver Licensing*, 732 A.2d 1157, 1160 (Pa. 1999). Such factual finding must be affirmed so long as sufficient evidence exists in the record to support the finding. *Id.* Medical testimony is generally required in order to establish that a licensee was unable to provide a knowing and conscious refusal to submit to chemical testing. *Id.* A licensee's self-serving testimony that he was incapable of making a knowing and conscious refusal of chemical testing is insufficient to meet the licensee's burden of proof. *Ostermeyer v. Department of Transportation, Bureau of Driver Licensing*, 703 A.2d 1075, 1077 (Pa. Cmwlth. 1997).

7

Here, Licensee's argument conflates his burden of proof with that of DOT. It was DOT's initial burden to prove that Licensee was offered a meaningful opportunity to submit to chemical testing. In this regard, DOT offered the testimony of Arresting Officer. N.T. at 6-7. Arresting Officer testified he read the DL-26B form verbatim to Licensee. *Id.* at 6. Arresting Officer stated that he also provided Licensee an opportunity to read the warnings and ask questions. *Id.* Arresting Officer declared that Licensee was alert and able to answer the request for a blood test. *Id.* at 9. Arresting Officer testified that Licensee promptly refused to submit to the blood test and signed the DL-26B form. *Id.* at 6. This evidence satisfies DOT's burden that Licensee was given a meaningful opportunity to submit to the blood test.

Once DOT showed that Licensee was given a meaningful opportunity to take the test, the burden then shifted to Licensee to show by competent medical evidence that he was physically incapable of taking the chemical test or that the refusal was not knowing or conscious. *Kollar*, 7 A.3d at 33. In this regard, Licensee did not present the testimony of a medical expert regarding his condition or inability to make a knowing and conscious refusal. Instead, Licensee relied solely on his medical records from the hospital, which the trial court admitted over DOT's hearsay objection.

While hospital records are an exception to the hearsay rule, and are admissible under Section 6108 of the Uniform Business Records as Evidence Act, 42 Pa. C.S. §6108, only the fact of hospitalization, the treatment prescribed, and the symptoms given are admissible as evidence. *Commonwealth v. DiGiacomo*, 345 A.2d 605, 608 (Pa. 1975). Opinions, diagnoses, and conclusions contained therein are not admissible. *Id*. Further, a hospital record offered to show a medical opinion as expert testimony is not admissible where the doctor is not available for cross-

8

examination. *Id.*[4] Upon review, the trial court did not err in determining that Licensee failed to show by competent medical evidence that he was incapable of making a knowing and conscious refusal.

Accordingly, we affirm the trial court's order.

_____
MICHAEL H. WOJCIK, Judge

---

[4] Indeed, as this Court has explained:

> The only medical evidence offered by [the licensee] was the written report of Dr. Menio. DOT objected to the admission of the report on the basis that it had no opportunity to cross-examine Dr. Menio. The trial court overruled the hearsay objection and admitted the report into evidence, basing its finding that [the licensee] was physically incapable of successfully performing the breath test upon that document.

> The courts of this Commonwealth have long adhered to the policy that the use of hearsay evidence is to be discouraged. *Heddings v. Steele*, [526 A.2d 349, 351 (Pa. 1987)]. Due process requires the challenging party be afforded a reasonable opportunity to cross-examine the reliability of adverse evidence. *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. 139 Horseshoe Corp.*, [629 A.2d 290, 293 (Pa. Cmwlth. 1993)]. "Although the right of cross-examination is not absolute and although hearsay evidence may be received upon proof of exceptional circumstances . . ., cross-examination is particularly important where it is the only means for testing the reliability of an opinion regarding disputed facts." *Ganster v. Western Pennsylvania Water Co.*, [504 A.2d 186, 192 (Pa. Super. 1985)]. Because Dr. Menio's report was so crucial in this case, we hold that the trial court erred as a matter of law in admitting the report over DOT's objection based upon its inability to cross-examine Dr. Menio.

*Hatalski v. Department of Transportation, Bureau of Driver Licensing*, 666 A.2d 386, 390-91 (Pa. Cmwlth. 1995) (footnote omitted).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Francis Nicholas DiMeo, III,    :
    :
            Appellant    :
    :
        v.        : No. 475 C.D. 2022
    :
Commonwealth of Pennsylvania,    :
Department of Transportation,    :
Bureau of Driver Licensing    :

# **O R D E R**

AND NOW, this 4th day of January, 2023, the order of the Montgomery County Court of Common Pleas, dated March 29, 2022, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge